Joseph M. ROSS and Cynthia C. Ross, Plaintiffs-Appellants,†

v.

Robert T. FOOTE, Jr., Defendant-Respondent.

Court of Appeals

*No. 89-1230. Submitted on briefs February 7, 1990.—Decided February 28, 1990.*

(Also reported in 454 N.W.2d 62.)

†Petition to review denied.

On behalf of the plaintiffs-appellants the cause was submitted on the briefs of *Dean P. Laing* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

On behalf of the defendant-respondent the cause was submitted on the brief of *Jon P. Christiansen, Maureen A. McGinnity, DeVonna Joy* of *Foley & Lardner* of Milwaukee.

Before Brown, P.J., Scott and Nettesheim, JJ.

NETTESHEIM, J. The issue on this appeal is whether Joseph Ross's common-law negligence action against Robert Foote, Jr., a co-employee at the time of Ross's injury, is barred by the co-employee immunity provisions of the Worker's Compensation Act. Ross claims that his action is permitted under an exception to the co-employee immunity rule. This exception provides that one employee may sue another for the negligent operation of a motor vehicle "not owned or leased by the employer." Sec. 102.03(2), Stats.

The trial court rejected Ross's claim that Foote, not the employer, was the lessee of the vehicle for purposes of sec. 102.03(2), Stats. The court thus concluded that the statutory exception to co-employee immunity did not apply. Accordingly, the court granted Foote's motion for summary judgment. Ross appeals. We agree with the court's ruling and affirm the judgment.

The essential facts, while somewhat lengthy, are straightforward and not disputed. Applied Power, Inc. (Applied) is an international company, maintaining facilities and divisions in the United States and fifteen other countries. As a result, many Applied employees travel extensively on company business. Applied's policy is to pay all reasonable business expenses incurred by its traveling employees. At one time, Applied provided corporate credit cards to its employees. This practice was

discontinued in 1985. Thereafter, Applied employees charged business expenses to their personal credit cards and obtained reimbursement by submitting expense reports and receipts.

Ross and Foote were both employed by Applied in April 1986, when they and other Applied employees flew to Naples, Italy to attend a business meeting of Applied's European managers in nearby Sorrento. The purpose of the meeting was to discuss European business strategy. Applied's travel agent made the travel arrangements. Following this conference, Foote was scheduled to fly to Munich, Germany to attend an employment-related trade show.

At the conclusion of the Sorrento conference, Ross, Foote and certain other Applied employees bused to the Naples airport. There they learned that their scheduled Alitalia flight from Naples to Milan had been canceled. They were forced to make other arrangements.

Ross, Foote, and two other Applied executives, including Phillip Brumder, Chairman and Chief Executive Officer of Applied, decided to rent a car and drive to Rome to pick up connecting flights. Brumder directed Foote to arrange the car rental while the others attended to luggage arrangements.

Foote rented a car from Hertz Italiana, providing his driver's license for identification and his personal credit card for payment. Foote did not volunteer that he was on company business and the Hertz Italiana agent made no such inquiry. The lease contract signed by Foote did not reveal his Applied employment or agency status.

While traveling from Naples to Rome, the four Applied employees were involved in an automobile accident. Foote was driving. Ross and another passenger were injured.

858

Upon returning to Wisconsin, Foote, in keeping with Applied's usual procedures, submitted an expense report for the European trip. He included the rental charges for the Hertz Italiana automobile and, in due course, was reimbursed.

Ross filed a worker's compensation claim which was approved. His medical expenses, in excess of $12,000, were paid by Applied's worker's compensation carrier. Ross was offered but refused an additional $560 payment based on a one percent permanent partial disability assessment.

In the fall of 1987, Ross commenced this lawsuit sounding in negligence against Foote. He was then no longer employed by Applied.

Because the essential facts are not disputed, the parties agree that the legal issue was properly addressed pretrial via Ross's motion for a declaratory ruling pursuant to sec. 806.04, Stats., and Foote's motion for summary judgment pursuant to sec. 802.08, Stats. Both motions required the application of sec. 102.03(2), Stats., to the facts of the case. This presented a question of law. *Sauer v. Reliance Ins. Co.,* 152 Wis. 2d 234, 240, 448 N.W.2d 256, 259 (Ct. App. 1989). We review such questions without deference to the trial court's decision. *In re T.M.S.,* 152 Wis. 2d 345, 354, 448 N.W.2d 282, 286 (Ct. App. 1989).

We will not repeat the oft-stated methodology for review of a summary judgment determination. *See Harman v. La Crosse Tribune,* 117 Wis. 2d 448, 451–52, 344 N.W.2d 536, 538–39 (Ct. App.), *cert. denied,* 469 U.S. 803 (1984). We do note, however, that our review is also *de novo* and independent of the trial court's decision. *Acharya v. Carroll,* 152 Wis. 2d 330, 338, 448 N.W.2d 275, 279 (Ct. App. 1989).

In support of his claim that Foote—not Applied—was the lessee of the vehicle, Ross cites to the black-letter law of agency that an agent who fails to disclose his principal is liable on his agreement. *Alexander & Edgar Lumber Co. v. McGeehan,* 124 Wis. 325, 326, 102 N.W. 571, 571 (1905). Ross also cites to similar law of contracts which holds that an agent who contracts without disclosing the agency will not be heard to contradict the writing by proving that he contracted only as an agent and not as a principal. *Yellow Mfg. Acceptance Corp. v. Britz,* 8 Wis. 2d 666, 669, 100 N.W.2d 325, 326 (1960). From this law, Ross reasons that Foote is personally responsible on his rental agreement with Hertz Italiana and therefore Applied cannot be said to have leased the vehicle for purposes of sec. 102.03(2), Stats.

While Ross's recital of agency and contract law is correct, it is also inapplicable. This law applies to disputes between the agent and the party with whom the agent contracts. Ross is not a party to any contract with Foote. For purposes of this action, the only relevant relationships between Ross and Foote are: (1) that of an alleged injured party and alleged tort feasor respectively; and (2) that of fellow employees.

The issue therefore is not governed by the law of undisclosed principal or contractual construction. Rather, the question is one of statutory construction, or, more accurately, the application of a statute to a set of facts. This presents a question of law when the essential facts are undisputed. *Sauer,* 152 Wis. 2d at 240, 448 N.W.2d at 259.

Thus, the inquiry in this case is whether Applied or Foote was the lessee of the vehicle within the meaning of sec. 102.03(2), Stats. This immediately broadens the scope of inquiry in this case to more than just the four corners of the rental agreement between Foote and Hertz

Italiana. Instead, the entire employment relationship between Foote and Applied is relevant, particularly as it bears upon Foote's role in renting the Hertz Italiana vehicle. As Foote very aptly puts it, "[T]he question . . . turns on Foote's authority, not disclosure."

The record undisputedly shows that Foote was acting within the scope of his employment and as Applied's agent when he rented the vehicle. The entire Italian excursion was employment related. Foote was authorized to rent vehicles for employment related purposes. Foote rented the Hertz Italiana vehicle not only in accord with this authorization but also at the express direction of Phillip Brumder, Applied's CEO and Chairman. Foote reasonably expected that he would be reimbursed by Applied for the rental expense and, in fact, he was.

These facts inexorably lead us to conclude that Foote: (1) leased the vehicle for Applied's benefit; (2) contracted as Applied's agent; and (3) incurred an expense which Applied was obligated to, and did, reimburse. To hold in such a situation that Applied was not the "lessee" of the vehicle within the meaning of sec. 102.03(2), Stats., flies in the face of common sense and does violence, we think, to the statutory goal.

The Worker's Compensation Act is the product of competing interests and represents a political compromise. *Schachtner v. DILHR,* 144 Wis. 2d 1, 6, 422 N.W.2d 906, 908 (Ct. App. 1988). This legislation represents a "delicate balancing" of the interests represented in our industrial society. *Id.* The exclusivity provisions are an integral part of the political compromise reached. *Id.* Our supreme court has said that if an injury falls within the coverage of the act, the worker's compensation remedy is exclusive. *Coleman v. American Universal Ins. Co.,* 86 Wis. 2d 615, 621–22, 273 N.W.2d 220, 222 (1979).

This same logic applies to claims against co-employees. "Although an injured employee gives up the right to sue a negligent coemployee, if the injured employee were placed in the same position as the negligent coemployee, he, too, would receive the benefit of being immune from suit." *Oliver v. Travelers Ins. Co.*, 103 Wis. 2d 644, 653, 309 N.W.2d 383, 387–88 (Ct. App. 1981). We properly bear in mind the admonition of our supreme court in *Jenkins v. Sabourin,* 104 Wis. 2d 309, 323, 311 N.W.2d 600, 607 (1981):

> New liabilities on employers or employees should not be imposed by courts without compelling and well understood reasons. While a tort remedy could be beneficient [sic] and just in a particular case, such precedent, unless carefully considered from the viewpoint of general state policy, could well gut the Workers Compensation Act, create injustice, and substantially impair the exclusivity-of-remedy provision, which has made the Workers Compensation Act tolerable to employers.

The "delicate balancing" which the Worker's Compensation Act represents should not be tilted to eliminate co-employee immunity on the fortuity of how an employee signed a vehicle rental agreement or whether an employer has issued a corporate credit card to such employee.

Instead, the question of whether the co-employee immunity applies should result from a thorough examination of the employment relationship. The trial court conducted such an inquiry here. We conclude the court correctly applied and interpreted sec. 102.03(2), Stats., in this fact situation.

Ross further contends, however, that the term "lease" as used in sec. 102.03(2), Stats., does not include the type of short-term vehicle lease present in this case.

Instead, Ross argues that the legislature really intended to immunize only long-term lease situations where the vehicle is not covered by the employer's fleet insurance policy.

In support of his interpretation, Ross presented affidavits of Hugh E. Russell who authored the legislation, served as deputy administrator of the worker's compensation division of the Department of Industry, Labor and Human Relations (DILHR) from 1956-86 and served as legal advisor to the Worker's Compensation Advisory Council. However, this material is not "history"; rather, it is evidentiary material created for purposes of this action.

While Russell's credentials are substantial, the rules governing resort to legislative history do not contemplate later observations by those involved in the legislation's creation. *See Goodyear Tire & Rubber Co. v. DILHR*, 87 Wis. 2d 56, 74-76, 273 N.W.2d 786, 796-97 (Ct. App. 1978). We conclude that this rule applies with even greater persuasion to the material proffered here—evidence created for purposes of and contemporaneously with a pending lawsuit. If consideration of such material were proper, the resolution of statutory construction disputes might turn on who has the better memory or, perhaps, who has lived the longest. The use of legislative history is properly limited to materials presented contemporaneously with the creation of the legislation.

Moreover, we conclude that the word "lease" is not ambiguous as applied to the facts of this case. *See Sauer*, 152 Wis. 2d at 241, 448 N.W.2d at 259. Thus, resort to legislative history is inappropriate. If the legislature had wished to preclude co-employee immunity for leases of short duration, it clearly had the opportunity to do so. It did not, choosing instead to clearly and unambiguously

extend co-employee immunity to all employer vehicle leases.

*By the Court.*—Judgment and order affirmed.