Robert F. WOLF, Plaintiff-Appellant-Cross
Respondent,†

v.

F & M BANKS, Madonna R. Miller, individually and in
her capacity as an agent of F & M Banks, and Jodi L.
Weiss, individually and in her capacity as an agent of
F & M Banks, Defendants-Respondents-Cross
Appellants.

Court of Appeals

*No. 94–1021. Submitted on briefs December 19,
1994.—Decided April 12, 1995.*

(Also reported in 534 N.W.2d 877.)

†Petition to review denied.

440

441

443

On behalf of the plaintiff-appellant-cross respondent, Robert F. Wolf, the cause was submitted on the briefs of *Anne B. Shindell,* and *Phillip C. Theesfeld,* of *Shindell & Shindell* of Milwaukee.

On behalf of the defendant-respondent-cross appellant, F & M Banks, the cause was submitted on the briefs of *Rocke A. Calvelli* and *William R. Rettko,* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.* of Milwaukee.

On behalf of the defendant-respondent-cross appellant, Madonna R. Miller, the cause was submitted on the briefs of *Thomas A. Lorenson* and *Dale L. English* of *Colwin & English, S.C.* of Fond du Lac.

On behalf of the defendant-respondent-cross appellant, Jody L. Weiss, the cause was submitted on the briefs of *John S. Jude* and *Steven J. Watson* of *Albert, Judde, Boyd & Simanek, S.C.* of Racine.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. Robert F. Wolf appeals from a summary judgment dismissing his claims against his former employer, F & M Banks, and two former coem-

ployees, Madonna R. Miller and Jodi L. Weiss. Against F & M, Wolf alleged claims for breach of contract, breach of a covenant of good faith and fair dealing, defamation and defamation by self-publication. Against Miller and Weiss, Wolf alleged claims for defamation and tortious interference with contract.

The trial court dismissed Wolf's contract claims on the grounds that Wolf was an employee-at-will. The court dismissed Wolf's defamation, defamation by self-publication and tortious interference with contract claims on the grounds that they were preempted by the Wisconsin Worker's Compensation Act (WCA). Alternatively, the court also dismissed Wolf's defamation by self-publication claim on the grounds that such cause of action was not recognized in Wisconsin.

The trial court also made further conditional rulings. The court held that if Wolf's defamation claims were not preempted, it would have denied summary judgment to F & M. The court also ruled that if Wolf's tortious interference with contract claims were not preempted, it would have denied summary judgment to Miller and Weiss. As to both of these conditional rulings, the court reasoned that there were material issues of fact as to both categories of claims. In the event that we reverse any of the trial court's rulings on Wolf's appeal, F & M, Miller and Weiss cross-appeal these conditional rulings.

We affirm the trial court's grant of summary judgment to F & M on Wolf's contract claims and the court's grant of summary judgment to F & M, Weiss and Miller on Wolf's defamation claims.

However, we disagree with the trial court's ruling that a claim for tortious interference with contract is preempted by the WCA. As to Weiss, we remand for further proceedings on this claim because we agree

445

with the trial court's conditional ruling that material issues of fact exist on that claim. However, as to Miller, we disagree with the trial court's conditional ruling that material issues of fact exist on that claim. Instead, we conclude that Miller's conduct was privileged as a matter of law.

## BACKGROUND

We take the facts from the summary judgment record. On November 10, 1990, Wolf submitted an application to F & M for the position of president of F & M's branch office in Waukesha. The application stated, in part:

> I understand that my employment can be terminated at any time, with or without cause, either at my option or that of the Company; I understand that no personnel recruiter, interviewer or other representative of the Company other than the President has any authority to enter into any agreement for employment for any specified period of time; I also understand that any employment manuals or handbooks that may be distributed to me during the course of my employment shall not be construed as an employment contract.

F & M hired Wolf. After Wolf began his employment, he received a letter from F & M confirming the terms of his employment. This letter recited Wolf's job titles, salary, salary review date, participation in a management incentive program, and certain vacation and social benefits.

In addition, F & M provided Wolf with a document entitled "F & M Financial Services Corporation Code of Ethics." This code set out guidelines for F & M employees in the following categories: conflicts of interest,

confidentiality, loans, investments, "Bank Bribery Act Provisions,"[1] dishonesty or fraud and legal advice. The code also stated that "it cannot address every situation that might arise."

The code further provided that: (1) any violations had to be reported to the corporate administrator of the code, (2) such report would be included in the employee's file, and (3) the employee would be given a copy of the report and an opportunity to respond before the matter would be reported to the board of directors for action and before such information became a matter of permanent record. In addition, the code required Wolf, like all F & M employees, to annually affirm that he had received a copy of the most recent edition of the code and that he agreed to comply with it.

During the course of his employment with F & M, Wolf began experiencing difficulties with two bank employees, Weiss and Miller. In July 1991, Weiss made allegations that Wolf was sexually harassing her. In December 1991, Weiss quit her position and wrote a letter to F & M detailing the alleged incidents of sexual harassment. The letter also accused Wolf of violations of the law and invited an examination of his expense and other business records. F & M called in a consulting psychologist to meet with the bank employees and to discuss the contents of Weiss's letter. During this interview, Miller repeated the contents of Weiss's letter. On January 13, 1992, F & M terminated Wolf's employment, claiming "poor performance" by him.

Wolf subsequently stated that a member of the local business community had heard that Wolf was terminated because he had engaged in sexual harass-

---

[1] This provision covered, inter alia, the receipt or giving by an employee of gifts or things of value from or to a bank customer or supplier.

ment. Wolf also claimed that another businessman had heard that Wolf lost his job because of poor performance.

In July 1992, Wolf filed an action against F & M, alleging that F & M's offer letter and the code created an express employment contract between him and F & M. Wolf claimed that F & M's termination of him constituted a breach of this contract and a breach of F & M's covenant of good faith and fair dealing.

Wolf's complaint also alleged defamation claims against F & M, Weiss and Miller. As to these claims, Wolf alleged that Weiss's letter of December 1991 was defamatory, that F & M had disseminated the defamatory information to other F & M employees, and that Miller had made defamatory statements about him to a member of the business community. Wolf alleged a separate defamation by self-publication claim against F & M based on the fact that Wolf would be required to reveal his discharge to prospective employers.

Finally, Wolf alleged claims for tortious interference with contract against Weiss and Miller, claiming that they had unlawfully interfered with his employment relationship with F & M.

The trial court granted F & M's, Weiss's and Miller's motions for summary judgment dismissing all of Wolf's claims. The court dismissed Wolf's contract claims because no express contract beyond an employment-at-will contract existed between Wolf and F & M. The court dismissed Wolf's tort-based defamation and interference with contract claims, ruling that they were preempted by the exclusivity provisions of the WCA. Alternatively, the court ruled that Wisconsin does not recognize a cause of action for defamation by self-publication.

Wolf appeals. We will recite additional facts as we address the appellate issues.

## DISCUSSION

### *STANDARD OF REVIEW*

In reviewing a motion for summary judgment, we apply the methodology set forth in § 802.08, STATS., in the same manner as the trial court. *See Bantz v. Montgomery Estates, Inc.,* 163 Wis. 2d 973, 977-78, 473 N.W.2d 506, 508 (Ct. App. 1991). Our review is de novo. *Christian v. Town of Emmett,* 163 Wis. 2d 277, 279, 471 N.W.2d 252, 253 (Ct. App. 1991). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2).

### *APPEAL*

#### 1. *Contract Claims*

Wolf claims that the written materials provided to him by F & M elevated what otherwise would have been an employment-at-will relationship between him and F & M to one of an express employment contract. Thus, he argues that his discharge by F & M constituted a breach of the express employment contract and a breach of F & M's covenant of good faith and fair dealing. *See* WIS J I—CIVIL 3044.

The general rule in Wisconsin is that employment is terminable at the will of either an employer or employee without cause. *Forrer v. Sears, Roebuck & Co.,* 36 Wis. 2d 388, 393, 153 N.W.2d 587, 589-90 (1967). A wrongful discharge of an employee-at-will

449

occurs only when "the discharge is contrary to a fundamental and well-defined public policy . . .. The public policy must be evidenced by a constitutional or statutory provision." *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 573, 335 N.W.2d 834, 840 (1983). Thus, absent an abrogation of an at-will relationship, employees are "dischargeable at the whim of the employer, subject to the unusual public policy considerations that may occasionally arise and which were explained in *Brockmeyer.*" *Ferraro v. Koelsch,* 124 Wis. 2d 154, 165, 368 N.W.2d 666, 672 (1985).

Wolf's argument that the employment relationship was converted from one at will to one of express contract is premised on F & M's code of ethics.[2] In support, Wolf argues that he was compelled to comply with the terms of the ethics code as a condition of employment, and, that pursuant to the code, F & M was compelled to provide him with written notice of the allegations of misconduct against him and the opportunity to respond to them prior to disciplinary action. Whether these facts served to elevate Wolf's employment relationship to the legal status of an employment contract presents a question of law which we review de novo. *See Bantz,* 163 Wis. 2d at 978, 473 N.W.2d at 508.

The leading case in this area is *Ferraro,* and Wolf likens this case to *Ferraro.* There, the employee, Fer-

---

[2] Wolf also cites to the letter from F & M confirming his employment in support of his argument. However, he offers little or no argument as to this letter. Instead, his appellate argument focuses on the code of ethics. In any event, we do not see the letter as supportive of Wolf's argument. The letter merely confirms Wolf's employment and states the essential terms of the employment, such as salary and certain benefits or perks. The letter says nothing about the duration of the employment or circumstances surrounding possible termination.

raro, acknowledged in his employment application that his employment could be terminated at any time. Thereafter, the employer provided Ferraro with an employee handbook which recited the policies and rules of the employment and Ferraro's acceptance of those regulations as a condition of his continued employment. *Ferraro*, 124 Wis. 2d at 158-59, 368 N.W.2d at 669. In addition, the handbook provided: (1) a layoff procedure based on seniority; (2) distinctions between probationary and nonprobationary employees, including disciplinary procedures; (3) a progressive procedure for discipline based on the number and seriousness of rule violations; (4) discharge only for "just cause"; and (5) a promise from Ferraro that he would provide a two-week notice before leaving the employment. *Id.* at 159-60, 368 N.W.2d at 669-70. In the face of these handbook provisions, the court concluded that the employment relationship had been altered from one at will to one governed by express contract. *Id.* at 164-65, 368 N.W.2d at 671-72.

This case is different from *Ferraro* on nearly all of the factors considered by the *Ferraro* court. First, while the employment application in *Ferraro* and this case both stated that the employment could be terminated at any time, here the employment application additionally recites Wolf's understanding "that any employment manuals or handbooks . . . shall not be construed as an employment contract." Second, unlike the strong language of *Ferraro* which described the required employee conduct as "policies and rules," here the code refers to the required conduct merely as "guidelines." Third, the code in this case does not prescribe a layoff procedure based on seniority. Fourth, the code does not make any distinction between probationary and nonprobationary employees. Fifth, the

451

code does not recite a progressive procedure for discipline; in fact, it is silent as to the form of any discipline and in what stages, if any, it is to be meted out. And, sixth, the code does not provide that discharge may be for "just cause."

Wolf points out that like *Ferraro*, the code provides the employee with the opportunity to be heard regarding any violations or discipline. However, as noted above, the code is silent as to the forms of possible discipline, such as warnings, suspension, probation or termination. Nor does the code provide for any progressive form of discipline. Moreover, the right to be heard relates to "guidelines" for employee conduct, not fixed rules and regulations. It does not follow per se that an employer has abandoned the employment-at-will relationship simply because an employee is allowed to be heard regarding an alleged infraction.

In addition, the summary judgment evidence demonstrates that the reasons for F & M's discharge of Wolf *do not even fall within the areas of conduct covered by the code*. Instead, Wolf's discharge was related to his managerial and supervisory conduct and his interaction with other employees, all beyond the purview of the matters addressed in the code. If we are to hold that an employment-at-will relationship is converted to one of express contract, then we, at a minimum, must be assured that the code covers all of the critical areas of employee conduct. Otherwise, we would by implication alone convert written materials produced by an employer for guidance and orientation of employees into an express contract. *See id.* at 166, 368 N.W.2d at 672-73.[3]

---

[3] We acknowledge that the code states in its introductory portion that "it cannot address every situation that might arise." However, it would seem that an employee handbook

Wolf also argues that the existence of an express contract for employment does not depend upon the inclusion of any particular term. We agree. Just as some similarity with the *Ferraro* factors will not per se create an express contract, so also some dissimilarity will not per se bar the creation of such a contract. Thus, we do not hold that absolute alignment with all of the *Ferraro* factors is required in order for an employment relationship to rise to the level of an express contract. Each case must be examined in light of its particular facts.

■

Nonetheless, *Ferraro* represents a proper starting point for the discussion. As we have demonstrated, this case is markedly different from *Ferraro*.[4] As the *Ferraro* court acknowledged, not all personnel manuals or employee handbooks will serve to modify an at-will employment relationship to one of express contract. *Id.* at 169, 368 N.W.2d at 674. If we were to hold that the code served to elevate the employment relationship here to one of an express contract, we would run afoul of *Ferraro*'s caution that we "[should] not by implication *alone* convert a handbook produced by an employer for the guidance and orientation of employees

which intends to convert a supervisor employee's at-will relationship to one of express contract would, at a minimum, address the critical areas of employee management, supervision and control. We conclude that this single sentence cannot be the basis for converting Wolf's employment relationship from one at will. A fairer reading of the sentence is that it pertains to the categories of conduct addressed in the code, not others.

[4] In *Mursch v. Van Dorn Co.*, 851 F.2d 990, 995-96 (7th Cir. 1988), the court employed a similar analysis, comparing each *Ferraro* factor with the handbook provided to the employee in that case.

into an express contract." *See id.* at 166, 368 N.W.2d at 672-73.

We also find *Bantz* instructive to this case. There, the employee, Bantz, was provided with an employee handbook outlining the general rules, regulations and disciplinary procedures related to her employment. *Bantz*, 163 Wis. 2d at 976, 473 N.W.2d at 507. Later in her employment, Bantz signed an "Employment Conduct Policy" which listed various employee acts as "just cause" for termination. *Id.* at 977, 473 N.W.2d at 507. Still later, another manual prescribed a schedule of progressive discipline. *Id.*

Despite these similarities to the *Ferraro* factors, the court of appeals concluded that Bantz remained an employee-at-will. *Bantz*, 163 Wis. 2d at 983, 473 N.W.2d at 510. The court took particular note that one of the written documents provided to Bantz stated that " '[t]he Company does not indicate by the foregoing Rules and Regulations that an employee will not be subject to discipline or discharge for any other reasons.' " *Id.* Here, although not as express as in *Bantz*, the code also advises that "it cannot address every situation that might arise." In addition, the *Bantz* court construed the handbook materials "more in the nature of 'guidelines' than contractual demands." *Id.* Here, there is no need for such construction because the code expressly sets out "guidelines" for employee conduct in the areas to which it applies.

■

*Bantz* offers at least as strong an argument for the application of *Ferraro* as the factors in this case. Yet, the *Bantz* court concluded that the employment relationship remained one at will. We hold likewise here.[5]

---

[5] Based on this analysis of the summary judgment evidence, we reject Wolf's claim that a dispute of material fact remains as

We affirm the trial court's grant of summary judgment dismissing Wolf's contract claims against F & M.

## 2. Defamation Claims

Wolf alleged defamation claims against F & M, Miller and Weiss. He also alleged a defamation by self-publication claim against F & M. Relying on *Becker v. Automatic Garage Door Co.,* 156 Wis. 2d 409, 418, 456 N.W.2d 888, 891-92 (Ct. App. 1990), the trial court ruled that all of these claims were preempted by the WCA. Alternatively, the court ruled that Wisconsin does not recognize the tort of defamation by self-publication.

We agree with the trial court's rulings. In *Becker,* the court of appeals held that defamation claims by an employee against an employer and its employees are preempted by the WCA. *Id.*

Wolf argues that the *Becker* holding is incorrect because defamation is an "injury to reputation . . . not . . . contemplated by the [WCA]."[6] While Wolf's brief cites numerous jurisdictions that have held that claims for defamation are not barred by the exclusivity provisions of worker's compensation laws, *Becker* is the controlling authority in Wisconsin. It is well settled that the published decision of any one panel of the

---

to the intention of the parties regarding the employment relationship.

[6] Wolf's appellate argument is limited to his challenge to the court of appeals decision in *Becker v. Automatic Garage Door Co.*, 156 Wis. 2d 409, 456 N.W.2d 888 (Ct. App. 1990). He does not argue that certain of Weiss's and Miller's allegedly defamatory statements may have been made outside the scope of their employment.

court of appeals has binding effect on all panels of the court, *see In re Court of Appeals*, 82 Wis. 2d 369, 371, 263 N.W.2d 149, 149-50 (1978), and published decisions of the court of appeals have "statewide precedential effect," § 752.41(2), STATS.

Next, Wolf urges this court to recognize the tort of defamation by self-publication. This tort holds that "if a defamed person was in some way compelled to communicate the defamatory statement to a third person, and if it was foreseeable to the defendant that the defamed person would be so compelled, then the defendant could be held liable for the defamation." *See Lewis v. Equitable Life Assurance Soc'y of the United States,* 389 N.W.2d 876, 886 (Minn. 1986). Wolf claims that because of his termination by F & M, he will now be "compelled to repeat the defamatory reasons for his discharge to existing and prospective employers."

We need not address this issue on the merits for two alternative reasons. First, as we have already explained, Wolf's defamation claims are preempted by the WCA. From this it logically follows that this hybrid of defamation is also precluded. Second, even assuming that we would recognize a claim for defamation by self-publication, the summary judgment record fails to establish that Wolf has ever self-published the allegedly defamatory information.

We affirm the trial court's grant of summary judgment to F & M, Miller and Weiss as to these claims.

456

### 3. Tortious Interference with Contract

Wolf alleged tortious interference with contract claims against Miller and Weiss.[7] Extending the *Becker* rationale to this claim, the trial court ruled that these claims were also preempted by the WCA.

In defending the trial court's ruling, Miller and Weiss rely on the general rule of exclusivity which underpins the WCA and various cases and legislative history which have spoken to that principle.[8] We fully recognize these pronouncements. Nonetheless, we conclude that the statutory scheme of the WCA reveals a clear legislative intent to not preempt the tort of intentional interference with contract.

Section 102.03, STATS., sets out the requisite conditions of liability under the WCA. The first condition is that "the employe sustains an injury." Section 102.03(1)(a). "Injury" is defined in § 102.01(2)(c), STATS., as "mental or physical harm . . . caused by accident or disease." However, the damages contemplated by the tort of intentional interference with contract include pecuniary loss of benefits of the contract and causally related consequential losses. *See* WIS J I—CIVIL 2780 cmt.; *see also* RESTATEMENT (SECOND) OF TORTS, § 774A (1977). Clearly, these types of damages are forms of economic loss, not "mental or physical harm" within the meaning of § 102.01(2)(c) . Therefore, a threshold condition of liability under the WCA is not

---

[7] In light of our holding that Wolf was an employee-at-will, the contract at issue is the employment-at-will contract. *See Lorenz v. Dreske*, 62 Wis. 2d 273, 286, 214 N.W.2d 753, 760 (1974).

[8] *See, e.g., Hake v. Zimmerlee*, 178 Wis. 2d 417, 504 N.W.2d 411 (Ct. App. 1993).

present in a tortious interference with contract setting. Thus, Wolf's claim is not preempted.

Miller and Weiss argue, however, that the exclusivity provisions of § 102.03(2), STATS., serve to preempt this claim. We disagree. Section 102.03(2) provides in relevant part:

> Where such conditions [of liability] exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier.

The critical language in this passage is the opening phrase: *"Where such conditions [of liability] exist . . . ." Id.* Here, the legislature has clearly signaled that the exclusivity provisions of the statute apply only where the conditions of liability are established in the first place. As we have already explained, one of these conditions of liability is an injury recognized by the WCA. And, as we have also explained, the damages flowing from a tortious interference with a contract are not embraced by the definition of "injury" set out at § 102.01(2)(c), STATS.[9] Therefore, the exclusivity provi-

---

[9] We observe, however, that one component of injury recognized by the tort of intentional interference with contract is emotional distress which is reasonably expected to so result from the interference. WIS J I—CIVIL 2780 cmt.; RESTATEMENT (SECOND) OF TORTS § 774A (1977). Our supreme court has ruled that the tort of intentional infliction of emotional distress is preempted by the WCA because the injury accompanying such tort qualifies as an "injury" within the meaning of the WCA. *Jenson v. Employers Mut. Casualty Co.*, 161 Wis. 2d 253, 266-68, 468 N.W.2d 1, 6-7 (1991). Therefore, it may be inappropriate to award this component of damages in a tortious interference

sions of § 102.03(2), STATS., do not bar Wolf's tortious interference with contract claims against Miller and Weiss.

Miller notes in her brief that other jurisdictions have ruled that a tortious interference with contract claim is barred under the applicable worker's compensation laws. However, our review of these cases reveals that none involve an analysis of the statutory language defining "injury" which controls our decision in this case.[10]

## CROSS-APPEAL

Miller and Weiss cross-appeal from the trial court's conditional ruling that if Wolf's tortious interference with contract claims survived, material issues of fact existed as to those claims.[11] They contend, either separately or collectively, that the summary judgment evidence shows that they did not act with the

with contract claim against a coemployee. This issue, however, is not before us on this appeal.

[10] In *Vorvis v. Southern New England Tel. Co.*, 821 F. Supp. 851, 856 (D. Conn. 1993), the preemption ruling was premised on the claimant's failure to allege that the coemployee's actions were directed by the employer. Absent such an allegation, preemption applies under the Connecticut WCA statute. *Id.*

In *Shaffer v. Procter & Gamble*, 604 A.2d 289, 292 (Pa. Super. Ct. 1992), the preemption ruling was premised on the fact that the claimant failed to show that the coemployee conduct arose out of "personal or business related animosity." (Quoted source omitted.) Absent such a showing, preemption applies under the Pennsylvania WCA statute. *Id.*

[11] The trial court also conditionally ruled that if Wolf's defamation claims had survived, material issues of fact existed as to those claims. Since we have upheld the court's dismissal of those claims, we need not address the cross-appeals brought by F & M, Miller and Weiss as to those claims.

requisite intent, that their conduct was otherwise privileged, and that their conduct was not a substantial factor in causing Wolf's discharge.

As to Miller, we disagree with the trial court's holding that material issues of fact exist as to her defenses.[12] Wolf's claim against Miller is primarily based on her communication of Weiss's allegations to the consulting psychologist who was called in by F & M to meet with the employees and to discuss the matters raised in Weiss's letter.

Tortious employee conduct which is otherwise actionable may be privileged on public policy grounds if the conduct is in furtherance of some interest of societal importance. *See Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 921-22, 440 N.W.2d 548, 552 (1989). In this setting, we conclude that the conditional privilege applied to Miller's conduct as a matter of law. Regardless of whether Miller suspected that Weiss's allegations might have been false or whether Miller otherwise failed to provide a "balanced" version of the facts, it remains that Miller's role (perhaps even her obligation) was to discuss the contents of Weiss's letter with the consultant. That, after all, was the very purpose of the interview. To not recognize the conditional privilege in such a setting would frustrate an employer's attempt to investigate and correct employee-related problems in the workplace. It would

---

[12] On this issue, we limit our consideration to those statements made by Miller which bear only on the tortious interference with contract claim. We do not consider those statements which Miller allegedly made to persons outside of the employment setting since they had no bearing on F & M's decision to discharge Wolf.

also chill an employee's willingness to freely and openly discuss the matter in such a setting.

The same holds true for the allegation that Miller discussed Weiss's allegation with coemployees. While not as formal a setting as the discussion with the consulting psychologist, the common interest of the employees in speaking to a matter of concern in the workplace is properly covered by the privilege. *See id.* at 922-23, 440 N.W.2d at 552. There is no competent evidence which counters Miller's invocation of the privilege.

We next address the issue as it pertains to Weiss. The gravamen of Wolf's claim against Weiss is her allegation of sexual harassment and the ensuing letter which she wrote to F & M detailing those allegations. In addition, Weiss's letter claimed that Wolf had committed violations of the law. The letter also intimated Wolf's dishonesty by inviting scrutiny of his expense and other business records.

Weiss argues that her actions were privileged as a matter of law because they were taken in good faith under *Harman v. La Crosse Tribune*, 117 Wis. 2d 448, 455, 344 N.W.2d 536, 540 (Ct. App.), *cert. denied*, 469 U.S. 803 (1984). She also argues that she shared a "common interest" conditional privilege under *Posyniak v. School Sisters of St. Francis*, 180 Wis. 2d 619, 628, 511 N.W.2d 300, 305 (Ct. App. 1993), and *Zinda*, 149 Wis. 2d at 922-23, 440 N.W.2d at 552. Weiss claims that her summary judgment evidence establishes this privilege and that Wolf's evidence fails to rebut it.

We disagree. Weiss's letter played a prominent role in the process which eventually led to Wolf's dis-

charge. While Weiss properly looks to the conditional privilege for protection, as the trial court correctly noted, the privilege may be lost if the defendant acted from ill will or an improper motive towards the plaintiff. *See* WIS J I—CIVIL 2780. Here, certain evidence runs counter to Weiss's claim that she acted in good faith and without ill will. Most notably, Weiss herself admitted in one portion of her deposition testimony that she had no evidence of Wolf's dishonesty or violations of the law.[13]

Thus, unlike the situation with Miller, there remain material issues of fact on the question of Weiss's possible bad faith or ill will which, if present, could defeat Weiss's conditional privilege and other defenses. Given the conflicts in the evidence and the equally competing inferences which could be drawn therefrom, we conclude that the trial court's conditional ruling denying Weiss's motion for summary judgment on these grounds was proper. Material questions of fact exist as to Weiss's right to invoke her conditional privilege, whether she intended to interfere with Wolf's employment relationship with F & M and whether her conduct substantially contributed to Wolf's alleged damage.

## CONCLUSION

We affirm the grant of summary judgment to F & M on all of Wolf's claims. We affirm the grant of summary judgment to Weiss and Miller on Wolf's defamation claims. We affirm the grant of summary judgment to Miller on Wolf's tortious interference with

---

[13] Unlike Weiss, Miller's conditional privilege defense is not countered by such contrary evidence or inferences.

contract claim. We reverse the grant of summary judgment to Weiss on Wolf's tortious interference with contract claim. We remand for further proceedings on this latter claim.

Costs are allowed to F & M Banks. No costs are allowed to the other parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.