Paul MARINO and Alexis Marino, Plaintiffs,

v.

ARANDELL CORPORATION, Defendant.

No. 97–C–32.

United States District Court, E.D. Wisconsin.

April 13, 1998.

948

Alan C. Olson, New Berlin, WI, for Plaintiff.

Christopher P. Banazak & Robert K. Shoel, Reinhart, Boerner, Van Deuren, Morris & Rieselback, S.C., Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

The sole question addressed by this decision is whether the exclusive remedy provision of the Wisconsin Worker's Compensation Act ("WCA" or "Act") bars the plaintiff Paul Marino's supplemental invasion of privacy claim, brought under Wisconsin's right of privacy statute, Wis.Stat. § 895.50 ("privacy statute").

Paul and Alexis Marino sued Mr. Marino's employer, Arandell Corporation ("Arandell"), in this forum under Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, alleging intentional discrimination on the basis of Mr. Marino's disability, chronic Hepatitis C. The plaintiffs claim that Arandell conducted prohibited medical inquiries about Mr. Marino's condition, denied him advancement opportunities, and intentionally failed to maintain confidentiality with respect to his medical records, subjecting him to emotional pain and humiliation. In addition to their ADA claim, the plaintiffs have included four supplemental state claims based on Wisconsin law: invasion of privacy, defamation, intentional infliction of emotional distress, and loss of consortium. The state claims, like the federal discrimination claim, arise from the same set of factual allegations, and this court exercises jurisdiction pursuant to 28 U.S.C. § 1367.

Arandell moved for partial judgment on the pleadings pursuant to Rule 12(c), Federal Rules of Civil Procedure, arguing that the plaintiffs' state claims should be dismissed because the Marinos' exclusive remedy under state law is the WCA. *See* Wis.Stat. § 102.03(2). On February 26, 1998, the court ruled from the bench, dismissing three supplemental tort claims—defamation, intentional infliction of emotional distress, and the attendant loss of consortium—under the reasoning advanced by Arandell and citing direct state precedent. *See Jenson v. Employers Mut. Cas. Co.*, 161 Wis.2d 253, 262–69, 468 N.W.2d 1 (1991) (holding that employee's common law claims for intentional infliction of emotional distress are barred by WCA exclusivity provision); *Wolf v. F & M Banks*, 193 Wis.2d 439, 455–56, 534 N.W.2d 877 (Ct. App.), *rev. denied*, 537 N.W.2d 572 (1995) (holding that employee's common law claims for defamation are barred by WCA exclusivity provision); *and Rosencrans v. Wisconsin Tel. Co.*, 54 Wis.2d 124, 128–29, 194 N.W.2d 643 (1972) (holding that common law claims for loss of consortium deriving from employee-spouse's injuries are barred by WCA exclusivity provision).

However, I reserved ruling on the fourth and final state claim, invasion of privacy, until further consideration and briefing by the parties. At this time, I am ruling that Paul Marino's supplemental claim for invasion of privacy is not barred by the WCA under Wisconsin law and will therefore not be dismissed at the pleading stage. Because loss of consortium is unavailable in conjunc-

tion with a claim under Wisconsin's privacy statute or under the ADA, Alexis Marino is no longer a party to this action.

Unlike the previously dismissed state claims, a claim under Wisconsin's privacy statute has never been held specifically barred under the WCA's exclusivity provision by Wisconsin courts at any level. Nor has the Seventh Circuit addressed this question. In *Johnson v. Hondo, Inc.*, 125 F.3d 408 (7th Cir.1997), a supplemental state claim brought under Wisconsin's privacy statute was found preempted by WCA exclusivity at the district court level. *See Johnson v. Hondo, Inc.*, 940 F.Supp. 1403 (E.D.Wis.1996). The statutory privacy claim, however, was not analyzed independently by the district court, but was dismissed without comment along with a handful of common law tort claims. On appeal to the Seventh Circuit, the plaintiff failed to brief the privacy claim. Consequently, although the dismissal of the other tort claims was affirmed on appeal, the Seventh Circuit considered the privacy claim waived and expressly declined to address the question of WCA exclusivity in the context of the privacy statute. *See Johnson*, 125 F.3d at 418 n. 9.

In the absence of a legal ruling directly on point by the highest state court, federal courts should rule as the state supreme court would, if squarely presented with the issue. *L.S. Heath & Son v. AT&T Info. Sys.*, 9 F.3d 561, 574 (7th Cir.1993). Based on the following analysis, the Wisconsin Supreme Court would not find plaintiff's privacy claim barred by WCA exclusivity.

## I. Exclusivity Under the WCA

The WCA's exclusivity provision, Wis. Stat. § 102.03(2), like the exclusive remedy provision anchoring any worker's compensation scheme, is crucial to the legislative compromise reflected in the Act. In exchange for guaranteed financial compensation for work-related injuries regardless of fault, employees relinquish their right to bring actions against employers in tort for potentially greater recoveries. Employers, on the other hand, give up their right to ply common law negligence defenses and agree to be strictly liable under the Act's compensation schedule, in exchange for immunity from all tort liability for employees' work-related injuries. *County of La Crosse v. Wisconsin Employment Relations Comm'n*, 182 Wis.2d 15, 29–31, 513 N.W.2d 579 (1994).

As codified, the exclusivity bar states:

Where [conditions of liability] exist the right to recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier. . . .

Wis.Stat. § 102.03(2).[1] The statutory "conditions of liability" are several, but for the purposes of the present analysis, one is significant: the employee must sustain an "injury" for WCA liability (and thus exclusivity) to exist. § 102.03(1)(a), Wis.Stat. "Injury" is defined in relevant part as "mental or physical harm to an employe caused by accident or disease . . ." § 102.01(2)(c).

In the present case, Arandell makes two definitional arguments in support of its contention that Marino's invasion of privacy claim is barred. First, Arandell argues that the alleged intentional work-place disclosure of Marino's confidential medical information is an "accident" within the meaning of the Act, as interpreted by Wisconsin courts.[2]

---

1. In 1978, the Wisconsin legislature created an intentional assault exception to the exclusivity bar. Section 102.03(2), Wis.Stat., does allow employees to bring actions against employers for assault with intent to cause bodily harm, notwithstanding WCA exclusivity. Sections 2 and 3, ch. 195, Laws of 1977, eff. Jan. 1, 1978.

2. Over the years, Wisconsin courts have continued to uphold an expansive, somewhat counterintuitive understanding of the term "accident" under the WCA. In Wisconsin, intentional conduct—even ongoing harassment directed at a certain employee—can be considered an "accident" under the WCA, as long as the injured person did not expect or foresee the harmful conduct. *Jenson v. Employers Mut.Cas. Co.*, 161 Wis.2d 253, 264, 468 N.W.2d 1 (1991). Although protracted on-the-job sexual harassment which becomes a dreaded feature of employment appears inconsistent with this definition of "accident" on its face, insofar as the conduct ceases to be "unexpected" or "unforeseen" from the perspective of the repeatedly harassed employee, this logic has not always prevailed. In *Zabkowicz v. West Bend Co.*, 789 F.2d 540 (1986), the Seventh Circuit reasoned that, although the

Second, Arandell argues that the privacy violation which Marino claims to have experienced constitutes "mental harm" within the meaning of the Act, as defined by Wisconsin courts. If both of these conclusions are valid, the defendant argues, then the plaintiff has sustained an "injury" as defined by § 102.01(2)(c), the conditions of liability are thereby satisfied, and WCA affords the exclusive remedy for plaintiff's privacy claim.

The defendant's argument is logical, but, for two interrelated reasons I do not think it compels the conclusion which the defendant advances. First, I believe that Wisconsin case law supports an understanding of "mental harm" which would not encompass the distinct injury that occurs when rights protected by statute or collateral contract are intentionally violated.[3] Thus, under the defendant's own analysis, the plaintiff's alleged "injury" in having his privacy invaded is not covered by the Act, and WCA exclusivity would not apply. *Coleman v. American Universal Ins. Co.*, 86 Wis.2d 615, 621, 273 N.W.2d 220 (1979) ("the compensation remedy is exclusive, however, only if the *injury* falls within the coverage of the act.")

Second, and more importantly, the defendant's analysis is too narrowly focused. To adopt it would efface the purposes behind both statutes at issue—the WCA and Wisconsin's right of privacy statute, Wis.Stat. § 895.50 ("privacy statute"). In *Byers v. Labor and Indus. Review Comm'n*, 208 Wis.2d 388, 561 N.W.2d 678 (1997), the Wisconsin Supreme Court overturned an appellate court decision which applied a similar type of analysis to find that emotional injuries sustained by intentional sexual harassment qualified as "mental or physical harm ... caused by accident or disease ..."[4] So finding, the court of appeals had concluded that the plaintiff's injuries satisfied the WCA conditions of liability and, therefore, any sexual harassment claim under the Wisconsin Fair Employment Act ("WFEA") was precluded by the Act's exclusive remedy provision. *Byers v. Labor and Indus. Review Comm'n*, 200 Wis.2d 728, 732–34, 547 N.W.2d 788 (Ct.App.1996), *rev'd* 208 Wis.2d 388, 561 N.W.2d 678 (1997). On review, the Wisconsin Supreme Court expressly assumed that plaintiff's claims satisfied the conditions for liability and were covered by the Act, but, nevertheless, reversed the court of appeals' decision. *Byers*, 208 Wis.2d at 396 n. 4, 561 N.W.2d 678. The supreme court's conclusion that WCA exclusivity did not bar plaintiff's WFEA claims was based instead on an analysis of the legislative intent of both statutes and a sensitivity to the harmful, unintended consequences of an overly literal analysis, focusing only on the WCA. I believe a similar analysis is in order with respect to the effect of WCA exclusivity on Wisconsin's privacy statute.

## II. The Byers Decision

In *Byers*, the Wisconsin Supreme Court begins its analysis by noting that "the legislature has adopted two statutes ... to address different kinds of work-related harms and to provide different remedies for the harms." *Id.* at 394, 561 N.W.2d 678. Although both the WCA and the WFEA are potentially applicable to the same set of facts, neither statute mentions the other and both

plaintiff argued that the sexual harassment had become foreseeable, she made no claim that her resulting emotional trauma was foreseeable: "[a]ny injuries incurred, therefore, were 'accidental', as that term is defined by the Wisconsin Supreme Court." *Id.* at 545. This conclusion was based on a line of "breakage" cases in Wisconsin, which hold that unexpected injury resulting from the ordinary performance of job duties, such as a sudden herniated disc caused by routine lifting, is considered an "accident" under the WCA. *See, e.g., School Dist. No. 1 v. Dep't of Indus. Labor & Human Relations*, 62 Wis.2d 370, 375, 215 N.W.2d 373 (1974), *citing Lewellyn v. Industrial Commission*, 38 Wis.2d 43, 55–61, 155 N.W.2d 678 (1968).

Some Wisconsin courts have clearly been uncomfortable with the inevitable results of the scope of "accident" under the WCA, particularly in this era of mounting sexual harassment and other hostile environment employment claims. *See, e.g., Lentz v. Young*, 195 Wis.2d 457, 472, 536 N.W.2d 451 (Ct.App.1995), *rev. denied*, (carving out an exception for intentional sexual harassment under the WCA's definition of "accident").

**3.** *See* discussion of *La Crosse*, 182 Wis.2d 15, 513 N.W.2d 579, *infra* Part IV.

**4.** The appellate court relied in part on the Seventh Circuit's reasoning in *Zabkowicz*, 789 F.2d 540, summarized *supra* note 3.

appear all-encompassing. *Id.* at 394–95, 561 N.W.2d 678. The court describes its duty as harmonizing the two acts in a way "that will give effect to the legislature's intent in enacting both statutes." *Id.* at 395, 561 N.W.2d 678. The decision then summarizes the policy compromise embodied in the WCA and, particularly, in the exclusive remedy concept, noted above and widely recognized.

In addition, I observe the following about the history of worker's compensation legislation in general. The goal of the workers' compensation acts which emerged with industrialism in the early part of this century was twofold: to provide immediate financial assistance to workers injured in an increasingly perilous workplace, and to shield fledgling industries from the financial ruin of large civil judgments. *See, e.g.,* historical background in Deborah A. Ballam, *The Workers' Compensation Exclusivity Doctrine: A Threat to Workers' Rights Under State Employment Discrimination Statutes,* 27 Am.Bus.L.J. 95, 102–07 (1989). Prior to workers' compensation schemes, common law defenses such as contributory negligence, assumption of risk, and the fellow-servant rule (wherein employers were not liable for the negligence of co-employees) often defeated the negligence claims of injured employees. *Id.* at 27. The inequity of these common law rules in the modern employment setting was all the more stark because society viewed work-related injuries as the inevitable, indeed necessary, result of industrialism.[5]

The significance of this history for our purposes is simply this: workers' compensation acts such as the WCA were not designed to regulate or deter employer conduct, but to financially compensate injured employees and, specifically, to redress impaired earning capacity. *See, e.g.,* Wis.Stat. § 102.43 (setting forth weekly compensation schedule, based on percentage of pre-injury average wage).

In contrast, statutes like the WFEA (and Wisconsin's privacy statute) have a clear prophylactic intent; they are designed not only to redress harm but to alter societal behavior that, as a matter of public policy, is deemed unacceptable. The WFEA is Wisconsin's fair employment statute and, in many respects, compiles and mirrors the protections offered by federal legislation such as Title VII, the ADA, and the Age Discrimination in Employment Act ("ADEA"). As *Byers* notes,

> [u]nlike the WCA, the WFEA is concerned with deterring and remedying intangible injuries which rob a person of dignity and self-esteem and with eliminating a discriminatory environment in the workplace that affects not only the victim of discrimination but the entire workforce and the public welfare.

*Byers,* 208 Wis.2d at 397, 561 N.W.2d 678.

Considering the clearly different purposes behind the WCA and the WFEA, *Byers* found that the WCA exclusive remedy provision was not intended to and therefore should not bar the plaintiff's sexual harassment claim under the WFEA. *Id.* at 400, 561 N.W.2d 678. Application of the *Byers* rationale to the case at bar, discussed below, produces a similar conclusion.

### III. Wisconsin's Privacy Statute

In 1977, the Wisconsin legislature enacted Wis.Stat. § 895.50[6], creating a cause of ac-

---

**5.** A 1911 Wisconsin case discussing the ·newly enacted WCA is eloquent on this point:

> Legislate as we may in the line of stringent requirements for safety devices or the abolition of employers' common-law defenses, the army of the injured will still increase, the price of our manufacturing greatness will still have to be paid in human blood and tears. To speak of the common-law personal injury action as a remedy for this problem is to jest with serious subjects, to give a stone to one who asks for bread.

> *Borgnis v. Falk Co.,* 147 Wis. 327, 133 N.W. 209 (1911).

**6.** Right of Privacy Act, ch. 176, § 5, 1977 Wis. Laws 756 (codified at Wis.Stat. § 895.50) provides:

> **Right of privacy**

> (1) The right to privacy is recognized in this state. One whose privacy is unreasonably invaded is entitled to the following relief:

> (a) Equitable relief to prevent and restrain such invasion, excluding prior restraint against constitutionally protected communication privately and through the public media;

> (b) Compensatory damages based either on plaintiff's loss or defendant's unjust enrichment; and

tion for invasion of privacy previously unrecognized at common law in this state. The birth of the right of privacy doctrine generally dates to 1890, when Louis B. Brandeis and Samuel D. Warren catalyzed the development of the privacy tort in the United States with the publication of their seminal article, *The Right to Privacy.* *See* Warren & Brandeis, *The Right to Privacy,* 4 Harv.L.Rev. 193 (1890). In fits and starts over the next half-century, the right of privacy developed and gained legitimacy in state courts and legislatures. By 1960, the overwhelming majority of American courts had recognized the right in some form, and only a handful had rejected it outright. *See* Dean Prosser, *Privacy,* 48 Cal.L.Rev. 383, 384–88 (1960).

Wisconsin was among the latter group. On numerous occasions, when presented with the opportunity to recognize a right of privacy at common law, the Wisconsin Supreme Court declined to do so. Most infamous was the case of *Yoeckel v. Samonig,* 272 Wis. 430, 75 N.W.2d 925 (1956), which affirmed the dismissal of a complaint alleging that a tavern operator photographed unwitting female patrons in the bathroom and then displayed the photographs to male customers. *Id.* at

(c) A reasonable amount for attorney fees.

(2) In this section, "invasion of privacy" means any of the following:

(a) Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass.

(b) The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.

(c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

(3) The right of privacy recognized in this section shall be interpreted in accordance with the developing common law of privacy, including defenses of absolute and qualified privilege, with due regard for maintaining freedom of communication, privately and through the public media.

431, 75 N.W.2d 925. Declaring that a right of privacy did not exist in Wisconsin, the *Yoeckel* court admonished the legislature to establish an invasion of privacy cause of action, if that was its policy intention. *Id.* at 434, 75 N.W.2d 925.

When the legislature finally responded in 1977, passing Wis.Stat. § 895.50, it essentially codified three of the four categories of privacy actions set forth in the Restatement (Second) of Torts §§ 652A—6521, which in turn were based on Prosser's influential analysis of privacy case law as it had developed around the country. *See* Prosser at 389. The three types of privacy invasions included in the Wisconsin statute are found § 895.50(2)(a)–(c) and can be summarized as follows: (1) physical intrusion into a place considered private; (2) the use of a person's name or likeness for commercial purposes; and (3) disclosure of highly personal information in a reckless manner.[7] The plaintiff's privacy claim proceeds under the third "disclosure" category, at subparagraph (2)(c) of the privacy statute, which defines an "invasion of privacy" as:

(4) Compensatory damages are not limited to damages for pecuniary loss, but shall not be presumed in the absence of proof.

(6)(a) If judgment is entered in favor of the defendant in an action for invasion of privacy, the court shall determine if the action was frivolous. If the court determines that the actions was frivolous, it shall award the defendant reasonable fees and costs relating to the defense of the action.

(b) In order to find an action for invasion of privacy to be frivolous under par.(a), the court must find either of the following:

1. The action was commenced in bad faith or for harassment purposes.

2. The action was devoid of arguable basis in law or equity.

(7) No action for invasion of privacy may be maintained under this section if the claim is based on an act which is permissible under §§ 196.63 or 968.27 to 968.37.

7. The fourth category, which was deleted from the Wisconsin statute after vehement opposition from the news media, was so-called "false light" publicity, or publicity which places a person in an unwanted and unsubstantiated light in the public eye. *See* Jacqueline Hanson Dee, Comment, *The Absence of False Light from the Wisconsin Privacy Statute,* 66 Marq.L.Rev. 99 (1982).

Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed.

Wis.Stat. § 895.50(2)(c).

### A "tort" by any other name ...

The defendant's chief objection to the suggestion that plaintiff's privacy claim is *not* preempted by the WCA relies on the provenance of the privacy statute, just recounted, and particularly on the denotation of such claims as "common law torts." Wisconsin courts have consistently ruled that the WCA exclusive remedy provision is meant to supplant actions in tort against employers. *See, e.g., La Crosse,* 182 Wis.2d at 32, 513 N.W.2d 579; *Jenson,* 161 Wis.2d at 276, 468 N.W.2d 1. Privacy claims based on a codification of common law torts are nevertheless "torts," defendant argues, and thus clearly barred by WCA exclusivity. Further, argues the defendant, *Byers* does not hold that *all* statutory claims, as distinct from common law claims, are exempt from the exclusive remedy bar, but only discrimination claims under the WFEA.

While it is true that the direct holding in *Byers* encompasses only employment discrimination claims brought under the WFEA, *see* 208 Wis.2d at 405–08, 561 N.W.2d 678, the supreme court did *not* thereby rule that other work-related statutory claims are presumptively barred by WCA exclusivity. In fact, *Byers* explicitly overruled several appellate court decisions which had drawn WCA exclusivity with too broad a brush. In *Schachtner v. Dep't of Indus., Labor & Human Relations,* 144 Wis.2d 1, 422 N.W.2d 906 (App.1988), the court of appeals had ruled expansively (and incorrectly) that the exclusive remedy provision relieves an employer "of statutory liability under all state and federal statutes, as well as of liability in contract and in admiralty, for an injury covered by the compensation act." *Id.* at 7, 422 N.W.2d 906. *Schachtner,* which involved an WFEA handicap discrimination claim, relied in part on *Saxhaug v. Forsyth Leather Co.,* 252 Wis. 376, 31 N.W.2d 589 (1948), a case holding that claims brought under Wisconsin's safe place statute, Wis.Stat. § 101.11, were barred by WCA exclusivity. *Byers* not only overruled *Schachtner,* but took pains to criticize that court's reliance on the earlier decision, remarking that *Saxhaug* did "not suggest that the WCA exclusive remedy provision is intended to preclude all statutory causes of action brought to remedy work-related wrongs." *Byers,* 208 Wis.2d at 402–03 n. 10, 561 N.W.2d 678. Noting that the safe place statute, unlike the WFEA, does not create a cause of action but merely establishes a standard of care for negligence actions, *Byers* suggests that the crucial question for determining application of the exclusivity bar is the "nature" of the conflicting statute. *See Id.*

In sum, I agree with both the defendant and the *Byers* court that the "common law tort"/"statutory claim" distinction amounts to little more than word play and is not dispositive of the issue of preemption under the WCA. Particularly in light of the history of the privacy right, I do not rely on this distinction in analogizing an invasion of privacy claim under § 895.50 to a harassment claim under the WFEA. The analogy to *Byers* is more subtle and contextual than that—based, in fact, on the "nature" of the statutes involved in the two cases. The *Byers* decision and its method of analysis stand for the proposition that, where the legislature has clearly expressed a public policy of protecting fundamental rights, and enacted a statutory framework to encourage the protection of those rights, the WCA exclusive remedy rationale should not bar resulting statutory claims. The following discussion applies the Byers rationale to the privacy statute in greater detail.

### IV. Analyzing Privacy Claims in Light of Byers

As the Wisconsin Supreme Court observed with respect to WFEA claims and WCA exclusivity, the legislature has created two statutes to address different kinds of harms and to provide different remedies for those harms. *Id.* at 394, 561 N.W.2d 678. The

same can be said of Wisconsin's privacy statute and the WCA. As discussed above, workers' compensation schemes were "designed to relieve the financial burdens of injured workers and to protect employers from financial burdens by providing them with immunity from tort actions." *Id.* at 398, 561 N.W.2d 678. The indemnity benefits granted by the Act are intended to replace wages lost or diminished due to injury. *See, e.g.,* Wis.Stat. § 102.11 (setting forth method of computing average weekly wage, which is the basis for all other benefits calculations). The WCA does not purport to directly regulate the negligent or intentional conduct of employers to ensure the maintenance of a safe working environment. Rather, the goal of the Act has always been to shift financial losses in such a way that both employers and employees remain afloat.

In contrast, Wisconsin's right of privacy statute, like the WFEA, aims to affect the behavior of individuals to encourage respect for personal dignity and basic rights. The right of privacy is "the right to be let alone." [8] A fuller expression of the values implicit in the concept may be this:

> The privacy of Warren and Brandeis was a tort notion, but it was meant to reflect a deeper instinct in the common law. It was meant to preserve an individual's "inviolate personality," a fragile and intangible thing, quite different than one's property or person, but essential to preserve a "civilized" and "cultured" society, particularly in an evolving American democracy which placed a premium on the individual.

Ken Gormley, *One Hundred Years of Privacy,* 1992 Wis.L.Rev. 1335, 1352 (1992). State

Representative R. Michael Ferrall, author of Assembly Bill 216, later passed as Wis.Stat. § 895.50, echoed this understanding of privacy as a basic right in urging bill opponents to "look to the evidence and to the undeniable need to fill an important vacuum in the area of individual rights in Wisconsin." Letter from Rep. R. Michael Ferrall (D.Racine) to editors of various Wisconsin newspapers (March 24, 1977) (on file with Wisconsin Legislative Council Staff's bill files for 1977 Assembly Bill 216).

As reflected in § 895.50, Wis.Stat., the right of privacy in Wisconsin is a complex of three different types of privacy interests, first identified analytically by Prosser.[9] According to Prosser, actions under the "disclosure" branch of the privacy tort protect an interest in reputation; actions claiming "intrusion" protect an interest in being free from mental distress; and actions alleging "appropriation" protect a proprietary interest in one's name or image. *See* Jacqueline Hanson Dee, Comment, *The Absence of False Light from the Wisconsin Privacy Statute,* 66 Marq.L.Rev. 99, 104–05 (1982) (citing Prosser, *Privacy,* 48 Cal.L.Rev. at 383 (1960)). Other privacy theorists have argued that all privacy actions share a common thread—an interest in preserving human dignity and individuality. *Id.* at 106.

However one chooses to analyze the privacy concept, unquestionably the "harm" contemplated and guarded against by the privacy statute is of a "non-physical" nature. Nor is it a "mental harm" such as contemplated by the WCA.[10] Rather, the essence of the "harm" perpetrated by an invasion of privacy

---

8. Judge Thomas Cooley coined the phrase in his 1888 treatise on Torts; Warren and Brandeis introduced it to American jurisprudence in *The Right to Privacy,* 4 Harv.L.Rev. 193 (1890), several years later. *See* Ken Gormley, *One Hundred Years of Privacy,* 1992 Wis.L.Rev. 1335, 1343–45 (1992).

9. *See* discussion Part III *supra.*

10. Many types of non-physiological "harm" have been engulfed by the category of "mental harm" under § 102.01(2)(c), in part because the WCA's definition of mental injury does not directly describe or limit the nature of the injury itself. The long-accepted standard for judging whether a given mental or emotional condition qualifies as

a "mental harm" under § 102.01(2)(c) merely specifies that the problem "must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience." *School Dist. No. 1 v. Dep't of Indus. Labor & Human Relations,* 62 Wis.2d 370, 377–78, 215 N.W.2d 373 (1974). Because of the way this standard is framed—leaving wide-open the notion of "mental injury" itself but directing attention to the extreme nature of whatever has brought on the injury—numerous intangible harms (which can always be deftly characterized as "mental" and are frequently the result of extreme conduct) arguably fall within the standard.

is that a fundamental right, valued by society and protected by statute, has been disregarded. It is, like the harm flowing from discrimination or harassment due to some protected characteristic, an "intangible injury." *See Byers* at 397, 561 N.W.2d 678.

In *La Crosse v. Wisconsin Employment Relations Commission*, 182 Wis.2d 15, 513 N.W.2d 579 (1994), the court indicated its willingness to distinguish between the concept of "injury" under the WCA and the idea of a separable, more abstract "harm," triggered in that case by the violation of contractually secured rights. Although the plaintiff in *La Crosse* suffered a back injury clearly falling within the coverage of the Act, her resulting termination without proper cause represented a potential violation of her rights under a collective bargaining agreement. *La Crosse*, 182 Wis.2d at 34, 513 N.W.2d 579. According to the court, the "harm" of improper termination was "a second and separate harm." *Id.* Finding that "injury" as a necessary condition for liability did not exist in the second instance, the court concluded that the intangible harm of a denial of contractual rights did not come within the purview of the WCA's exclusive remedy provision, § 102.03(2), and plaintiff's claim was not barred. *Id.* The *La Crosse* court, like the *Byers* court three years later, based its analysis of the reach of WCA exclusivity and the definition of "injury" in § 102.01(2)(c) in large part on legislative history and the balance of policy considerations embodied in workers' compensation. *See id.* at 31, 35–36, 513 N.W.2d 579.

Although *Byers* assumed that the plaintiff's sexual harrassment claim involved injuries that were covered by the Act, *see Byers*, 208 Wis. 2d at 396 n. 4, 561 N.W.2d 678, the court recognized that the mere fact of *potential compensability* under the Act did not control the issue of whether the exclusive remedy provision should bar all competing claims. Such an analysis of WCA exclusivity, *Byers* reasoned, would lead to the following unacceptable conclusion:

> If we were to interpret the WCA exclusive remedy provision as the employer proposes, only employes whose claims were not covered under the WCA would be afforded relief under the WFEA. Those employes whose claims for physical and mental injuries were covered by the WCA, those perhaps most harmed by discriminatory conduct violating the WFEA, would be limited to worker's compensation.

*Id.* at 400–01, 561 N.W.2d 678. The fact that *Byers* is able to distinguish two categories of WFEA plaintiffs—those whose injuries *are* compensable under the Act and those whose *are not*—reflects an important feature of discrimination claims (and privacy claims, as well). Namely, it is possible to be the victim of workplace discrimination, and to successfully prove up the elements of a WFEA cause of action, without experiencing or alleging "physical or mental harm" within the meaning of the Act. Sexual harassment is the unusual WFEA discrimination claim, in that its proof model tends to require, or at least benefit from, some showing of emotional injury.[11] But a plaintiff alleging that he was fired unlawfully because of age, for example, need only establish the following to make out a prima facie case: (1) that he is forty or older; (2) that he was fired; (3) that he was qualified; and (4) that he was replaced by someone younger. Wis.Stat. §§ 111.321, .33(1); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As *Byers* implicitly recognized, it would be unfair if an age discrimination plaintiff had the benefit of WFEA remedies, while a sexual harassment plaintiff, by virtue of the unique nature of that type of discriminatory conduct and the severity of her injury,

---

11. The *Byers* decision on WFEA preemption arose in the context of a hostile environment harassment claim for good reason. Although sexual harassment plaintiffs no longer have to show psychological injury to establish an actionable hostile environment claim, plaintiffs must still show that they *subjectively perceived* the environment as abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Because the plaintiff's subjective belief remains important and because the frequent result of hostile environment harassment often is emotional distress or mental injury, sexual harassment plaintiffs, more often perhaps than victims of disparate treatment discrimination, find themselves pleading factual allegations that sound theoretically compensable under the WCA's definition of "injury." *See supra* note 10.

was forced to make do with workers' compensation.

The same logic applies to privacy claims. An invasion of privacy claim under § 895.50, Wis.Stat., may also be maintained without a clear showing of resulting mental or physical harm. *Zinda v. Louisiana Pacific Corp.*, 149 Wis.2d 913, 440 N.W.2d 548 (1989), lays out the four necessary elements to establish a cause of action for "disclosure" of private information under § 895.50(2)(c)—the type of privacy invasion claimed by the plaintiff in the instant case. The plaintiff must prove: (1) there was a public disclosure of facts regarding the plaintiff; (2) the disclosed facts were not already in the public domain; (3) the facts once disclosed were of a type highly offensive to a reasonable person; and (4) the defendant acted unreasonably or recklessly as to whether there was a legitimate public interest in the disclosed facts, or had actual knowledge that none existed. *Id.* at 929–30, 440 N.W.2d 548. Thus, a plaintiff bringing a privacy claim need not allege mental distress or emotional injury as a result of the invasion.[12] Theoretically, even a disclosure of private information that injures the sensibilities of reasonable people—but which does not traumatize the plaintiff himself—is actionable under the privacy statute.

Again, as *Byers* noted, what sense would it make for only those privacy plaintiffs who suffer disabling emotional trauma to be limited to workers' compensation as their exclusive remedy? Plaintiffs in this situation are in the awkward and contradictory position of being simultaneously encouraged and discouraged to plead compensable mental injury—encouraged in order to establish damages; discouraged in order to avoid WCA preemption.

The problem lies in the conception of "harm" done under prophylactic, conduct-regulating statutes such as the privacy statute and the WFEA. The real harm—a plundering of personal "dignity and self-esteem", *Byers* at 397, 561 N.W.2d 678—is not properly characterized as either "mental" or "physical" and should not be considered compensable under the WCA. The Larson treatise on workers' compensation law, cited numerous times by Wisconsin courts grappling with WCA issues, reflects a similar understanding of the importance of seeing the "essential" nature of a claim before passing judgment on whether it is preempted.

> If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, *including in "physical" the kinds of mental or nervous injury that cause disability,* the action should be barred even if it can be cast in the form of a normally non-physical tort.

Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law,* § 68.34(a) at 13–180 (1997) (original emphasis).

The essence of the harm caused by an invasion of privacy is not disabling physical or mental injury as described by Larson. Section 895.50 was designed to prevent wrongs which cause harm of a less tangible sort. This conclusion is further supported by the following two features of the privacy statute.

> *Wolf* and *Becker* are both pre-*Byers* cases in which the court of appeals did not engage in an analysis regarding the purpose of defamation laws or the nature of the harm caused by the tort of defamation. It also should be noted that defamation is an ancient common law tort which predates workers' compensation schemes. *See Wolf v. F & M Banks,* 193 Wis.2d 439, 455–56, 534 N.W.2d 877 (Ct.App.), *rev. denied,* 537 N.W.2d 572 (1995) (citing *Becker v. Automatic Garage Door Co.,* 156 Wis.2d 409, 418, 456 N.W.2d 888 (Ct.App.), *rev. denied,* 458 N.W.2d 533 (1990)).

---

**12.** Common law defamation claims, which *have* been held barred by WCA exclusivity by Wisconsin courts, although not by the Wisconsin Supreme Court, also do not require proof of actual injury as an essential element. *See, e.g., Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ("The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss."); *and Van Straten v. Milwaukee Journal Newspaper-Publisher,* 151 Wis.2d 905, 912, 447 N.W.2d 105 (Ct.App.), *rev. denied,* 451 N.W.2d 297 (1989) (listing elements of defamation claim in Wisconsin, but not requiring showing of special harm).

First, § 895.50(1)(c) allows an award of reasonable attorneys fees to plaintiffs whose privacy has been unreasonably invaded. As far as this court is aware, this type of recovery is not permitted in any other tort action in Wisconsin. *See also* Dee, 66 Marq.L.Rev. at 131. Historically, plaintiffs are offered the carrot of reasonable attorneys fees when legislation creating a cause of action is meant to promote some important public policy goal. To enforce the statutory objectives, the legislature enlists individuals as "private attorneys general" and permits recovery of reasonable litigation expenses to compensate plaintiffs for their trouble and expense. *See, e.g., Watkins v. Labor & Indus. Review Comm'n,* 117 Wis.2d 753, 764–65, 345 N.W.2d 482 (1984). Particularly with respect to statutory violations which do not produce a tangible injury or offer no prospect of substantial compensatory damages, lawmakers know that the only way to encourage civil "enforcement" suits is to permit recovery of reasonable attorneys fees. Another example of a Wisconsin statute which uses this device to further an important public interest—one otherwise not easily vindicated—is the Wisconsin open records law. *See Wis.Stat.* §§ 19.35; 19.37(2).

Although the WFEA does not expressly provide for attorneys fees, the Wisconsin Supreme Court has concluded that the Equal Rights Division, the administrative arm adjudicating WFEA claims, has the implied authority to award reasonable attorneys fees to prevailing plaintiffs, and such fees are now routinely granted. *Watkins,* 117 Wis.2d at 765, 345 N.W.2d 482. "Without an award of reasonable attorney's fees," the court reasoned, "few victims of discrimination would be in an economic position to advance both their individual interest and the public's interest in eliminating discriminatory employment practices." *Id.* at 764, 345 N.W.2d 482. Thus, the presence of an *explicit provision* granting reasonable attorneys fees in the privacy statute suggests that the legislature perceived the policy imperatives behind Wis. Stat. § 895.50 as significant and worthy of the utmost protection. *See also Newspapers, Inc. v. Breier,* 89 Wis.2d 417, 438, 279 N.W.2d 179 (1979) ("... it must be conceded that the public interest in the protection of

the reputations of individuals is not an insubstantial concern ...").

Finally, the privacy statute also entitles prevailing plaintiffs to equitable relief "to prevent and restrain such invasion, excluding prior restraint against constitutionally protected communication privately and through the public media." § 895.50(1)(a), Wis.Stat. The specific entitlement of equitable relief suggests that the legislature foresaw the statute being used prospectively, to regulate harmful conduct in a direct manner, something the WCA can never hope to effect. Like the award of reasonable attorneys fees, the availability of equitable relief under the statute supports the idea that the legislature intended to vindicate interests that are not compensable through purely monetary judgments. Just as WFEA claimants are entitled to a finding of discrimination even if the discriminatory conduct did not result in financially compensable harm, *see, e.g. Watkins v. Dep't of Indus., Labor, & Human Relations,* 69 Wis.2d 782, 233 N.W.2d 360 (1975), a plaintiff alleging an invasion of privacy may bring an action merely to restore his personal dignity or reputation, and to prevent future invasions.

## V. Conclusion

 Plaintiff Paul Marino has alleged that his employer intentionally read his private medical information, failed to maintain its confidence, and disclosed related information to co-workers. Whether these charges will withstand summary judgment or trial remains to be seen. But at this stage, they appear to present a facially valid claim for invasion of privacy and are not barred by WCA exclusivity based on the foregoing analysis.

Workplace privacy issues are the subject of increasing concern in this technological era. *See, e.g.,* Laura B. Pincus & Clayton Trotter, *The Disparity Between Public and Private Sector Employee Privacy Protections: A Call for Legitimate Privacy Rights for Private Sector Workers,* 33 Am.Bus.L.J. 51 (1995). Just a few of the privacy conundrums facing employers and employees these days are: monitoring of electronic mail;

mandatory drug and alcohol testing; polygraph testing; workplace video surveillance systems; HIV status and other required medical disclosures; and employer use of personal data, such as credit reports and criminal records. *Id.* at 52–57.

The potential exists that Wisconsin's privacy statute could be used to negotiate many of these issues in the coming years. The clear legislative intention to protect the fundamental rights embodied in the privacy statute could easily be disregarded if the entire spectrum of workplace privacy issues is swept under the WCA rug by the exclusive remedy rationale. Workers' compensation, once a blessing for injured workers, was never meant to have this effect.

**THEREFORE, IT IS ORDERED** that defendant's Motion to Dismiss plaintiff's claim under Wis.Stat. § 895.50 is **DENIED.**

**IT FURTHER IS ORDERED** that Alexis Marino is dismissed as a party to this action.