Arlene L. FAKLER and Gary A. Fakler, Plaintiffs,

WEA INSURANCE CORPORATION, Plaintiff-Respondent,

v.

Denis C. NATHAN, M.D., David L. Heber, M.D., Assa
Mayersdorf, M.D., Physicians Insurance Company of
Wisconsin, Inc., and Patients Compensation Fund,
Defendants-Appellants.

Court of Appeals

*No. 96–2377. Oral argument September 10, 1997.—Decided
October 28, 1997.*

(Also reported in 571 N.W.2d 465.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Stephen O. Murray*, of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.*, of Milwaukee, with oral argument by *Stephen O. Murray*.

On behalf of the plaintiff-respondent, WEA Insurance Corporation, the cause was submitted on the brief

of *Michael E. Banks* of *Kelly & Haus*, of Madison, with oral argument by *Michael E. Banks*.

Before Fine, Schudson and Curley, JJ.

CURLEY, J.   Denis C. Nathan, M.D., David L. Heber, M.D., Assa Mayersdorf, M.D., Physicians Insurance Company of Wisconsin, Inc., and Patients Compensation Fund (the Defendants) appeal from a trial court order denying their motion for full costs from WEA Insurance Corporation. The trial court held that the Defendants could only recover costs from WEA that were incurred because of WEA's participation as a subrogated insurer in Arlene A. and David L. Fakler's lawsuit against the Defendants. The Defendants claim that they should be allowed to recover the full amount of their costs from WEA even though they agreed not to seek costs from the Faklers pursuant to a settlement agreement in exchange for the Faklers withdrawing their motion after verdict. We disagree. We conclude that, in light of the settlement, allowing the Defendants to recover any costs from WEA: (1) would be drastically unfair to WEA; and (2) would award an undeserved windfall to the Defendants. Accordingly, we reverse the trial court's order to the extent that it allows the Defendants to recover any costs from WEA.

## I.  BACKGROUND.

On November 10, 1992, Arlene L. and Gary A. Fakler filed a medical malpractice suit against the Defendants. Pursuant to § 803.03(2), STATS., WEA Insurance Corporation, the Faklers's subrogated insurer, was joined in the lawsuit. Although WEA participated in a limited fashion prior to trial, it chose to have the Faklers represent its interest at trial. After

the trial, on January 12, 1996, the jury entered a verdict in favor of the Defendants. On February 1, 1996, within the twenty-day limit of § 805.16, STATS., the Faklers filed a motion after verdict for a new trial. On February 14, 1996, the Defendants filed an order for judgment with the trial court, which sought costs from both the Faklers and WEA. Subsequently, without WEA's participation, the Defendants entered into a settlement agreement with the Faklers. Pursuant to the settlement agreement, the Defendants agreed not to seek costs from the Faklers, and the Faklers agreed to withdraw their motion after verdict. On February 15, 1996, more than twenty days after the date of the jury verdict, the Faklers withdrew their motion after verdict. On the same day, the Defendants filed an amended order of judgment that sought costs only from WEA.

WEA opposed the Defendants' request for costs, and after both sides had filed briefs, the trial court issued its memorandum decision. In its decision, the trial court found that "crafty lawyering" involved in the settlement agreement had created an "inequity to the subrogated plaintiff who participated in the litigation under the condition that its interest will be represented by the insured, but never assumed the risk of bearing the costs alone." Therefore, the trial court held that the Defendants could only recover costs from WEA that were incurred as a result of WEA's participation in the lawsuit. The Defendants now appeal.

## II. ANALYSIS.

The Defendants argue that pursuant to *Sampson v. Logue*, 184 Wis. 2d 20, 515 N.W.2d 917 (Ct. App. 1994), WEA is liable for costs regardless of the settlement agreement. In contrast, WEA argues that

pursuant to *Wilmot v. Racine*, 136 Wis. 2d 57, 400 N.W.2d 917 (1987), it "stands in the shoes" of the Faklers, and cannot be liable for costs if the Faklers are not liable for costs. We need not address either of these arguments because another case, *Schulte v. Frazin*, 176 Wis. 2d 622, 500 N.W.2d 305 (1993), provides us with a clear standard for resolving these issues.

In *Schulte,* the issue before the court concerned "the respective rights of the insured and the subrogated insurer when the insured has settled with the defendants without involving the subrogated insurer." *Schulte*, 176 Wis. 2d at 628, 500 N.W.2d at 307. The court resolved the issue solely by applying equitable principles. The court stated, "The doctrine of subrogation is based upon equitable principles. 'Equity does not lend itself to the application of black letter rules.' To resolve the issue in this case, we must apply equitable principles to the facts." *Id.* (citations omitted). Similarly, the issue before this court concerns the respective rights of a subrogated insurer (WEA) and a defendant when the insured (the Faklers) has settled with the defendants without involving the subrogated insurer. Therefore, in order to resolve this issue, "because subrogation is an equitable doctrine," we, like the supreme court in *Schulte*, "must concern ourselves primarily with balancing the equities." *See Schulte*, 176 Wis. 2d at 636–37, 500 N.W.2d at 310.

The Defendants were successful at trial and, therefore, before they settled with the Faklers, they were entitled to recover costs from both the Faklers and WEA. *See Sampson v. Logue*, 184 Wis. 2d 20, 28–30, 515 N.W.2d 917, 921 (Ct. App. 1994); *Gorman v. Wausau Ins. Cos.*, 175 Wis. 2d 320, 327–28, 499 N.W.2d 245, 248 (Ct. App. 1993); § 814.03(1), STATS. We

acknowledge that it may seem unfair to disallow the Defendants to recover costs from WEA, because doing so prevents them from recovering any costs at all. On balance, however, we conclude that, given the circumstances of this case, it would be inequitable to allow the Defendants to recover any costs from WEA because doing so: (1) would be drastically unfair to WEA; and (2) would award an undeserved windfall to the Defendants.

### 1. Unfairness to WEA.

In light of the trial relationship between WEA and the Faklers, and the unusual settlement between the Faklers and the Defendants, allowing the Defendants to recover any costs from WEA would be unfair to WEA. Section 803.03(2), STATS., required the Faklers to join WEA as a plaintiff in their lawsuit against the Defendants. Following joinder, WEA had three options: (1) to participate in the prosecution of the action; (2) to have its interest represented by the Faklers; or (3) to move for dismissal. Section 803.03(2)(b), STATS.[1] WEA chose the second option, and relied on the Faklers to

---

[1] Section 803.03(2)(b), STATS., states:

Options after joinder. Any party joined pursuant to par. (a) may 1. participate in the prosecution of the action, 2. agree to have his or her interest represented by the party who caused the joinder, or 3. move for dismissal with or without prejudice. If the party chooses to participate in the prosecution of the action, the party joined shall have an equal voice with other claimants in such prosecution. If the party joined chooses to have his or her interest represented by the party who caused the joinder, the party joined shall sign a written waiver of the right to participate which shall express consent to be bound by the judgment in the action. Such waiver shall be become binding when filed with the court, but a party may withdraw the waiver upon timely motion to the judge to whom the case has been assigned with notice to other parties. A party who represents the interest of another party and who obtains

represent its interest at trial.[2] After the jury returned a verdict in favor of the defendants, the Faklers filed a motion after verdict to grant a new trial. Motions after verdict must be filed and served within twenty days of the verdict's rendering. *See Northridge Co. v. W.R. Grace & Co.*, 205 Wis. 2d 265, 284, 556 N.W.2d 345, 353 (Ct. App. 1996); § 805.16(1), STATS. The twenty-day time limit is strictly construed and the trial court lacks the ability to consider postverdict motions filed after the twenty-day deadline, unless the court has granted an extension within that time. *See Northridge*, 205 Wis. 2d at 284, 556 N.W.2d at 353; *Ahrens-Cadillac Oldsmobile, Inc. v. Belongia*, 151 Wis. 2d 763, 766–67, 445 N.W.2d 744, 745 (Ct. App. 1989). The verdict in this case was rendered on January 12, 1996. The Faklers filed their motion after verdict on February 1,

a judgment favorable to such other party may be awarded reasonable attorney fees by the court. . . .

[2] According to § 803.03(2)(b), STATS., if WEA chose to have the Faklers represent its interest at trial, WEA should have filed a written waiver of its right to participate with the trial court. WEA did not file such a waiver in this case. Nevertheless, the trial court made a factual finding that WEA did, in fact, choose to have the Faklers represent its interest at trial. We must sustain this finding if it was not clearly erroneous. Section 805.17(2), STATS. The record reveals that although WEA did not actively participate in the prosecution of the action at trial, it was substantially involved in the proceedings before trial. Thus, even though WEA failed to comply with the technical requirement of filing a written waiver, it clearly did not intend to abandon its interest in the action after protecting that interest before trial. Therefore, we conclude that in spite of WEA's noncompliance with § 803.03(2)(b)'s technical requirements, the trial court's finding that WEA chose to have the Faklers represent its interest at trial was not clearly erroneous, and must be sustained. Section 805.17(2).

1996, fourteen business days later. Therefore, the Faklers' motion was timely filed. On February 15, 1996, however, after entering into the settlement agreement with the Defendants, the Faklers withdrew their motion after verdict. By that date, the twenty-day limit imposed by § 805.16, STATS., had passed. Therefore, on February 15, 1996, WEA was barred from filing its own motion after verdict.

Given the terms of the settlement agreement between the Faklers and the Defendants, the Faklers' decision to withdraw their motion at a time when WEA could no longer file a substitute motion created an inequitable result for WEA. The Faklers were representing WEA's interest at trial, and the motion after verdict that the Faklers filed was WEA's and the Faklers' last chance to challenge the jury verdict at the trial level. Even though the motion after verdict greatly affected WEA's interest, which the Faklers were representing, the Faklers chose to exchange their motion for the Defendants' promise not to seek costs from the Faklers. Although the Defendants' promise not to seek costs from the Faklers benefited the Faklers, it did not benefit WEA, which under *Sampson,* was also liable for costs. Therefore, the Faklers effectively bargained away a motion, in detriment to WEA, for no corresponding benefit to WEA. This conduct cannot be reconciled with the Faklers' status as parties who represented WEA's interest, pursuant to § 803.03(2)(b), STATS. Because the Faklers represented WEA's interest at trial, they may have been awarded reasonable attorney fees if they had been successful. Section 803.03(2)(b). It would be inequitable to allow the Faklers, in a successful outcome, to obtain attorney fees for representing WEA's interest, while permitting

the Faklers, in an unsuccessful outcome, to place all of the liability for costs on WEA by bargaining away WEA's interest. Therefore, we conclude that allowing the Defendants to recover costs in this circumstance would be unfair to WEA.

### 2. *Windfall to the Defendants.*

■
Allowing the Defendants to recover any costs from WEA would also award an undeserved windfall to the Defendants. Pursuant to the settlement agreement entered into between the Defendants and the Faklers, the Faklers promised to withdraw their motion after verdict, and actually withdrew the motion. If the Faklers had not withdrawn their motion, it might have been successful and the trial court might have ordered a new trial. Therefore, the Faklers' promise was a measurable benefit to the Defendants. In contrast, if the Defendants could promise not to seek costs from the Faklers, and still recover their entire costs from WEA, the Defendants' promise to the Faklers would not constitute a measurable detriment to the Defendants. Therefore, if we allow the Defendants to recover costs from WEA, they will have received something in exchange for nothing, an undeserved windfall.

### 3. *Conclusion.*

In sum, the issue presented by the instant case requires us to apply equitable principles to the facts of this case. After doing so, we conclude that it would be inequitable to permit the settlement agreement between the Defendants and the Faklers to produce an undeserved windfall to the Defendants while simultaneously unfairly penalizing WEA. Therefore, the

Defendants should not be allowed, under the terms of their settlement, to recover any costs from WEA. Thus, we reverse the trial court's order to the extent that it allows the Defendants to recover any costs from WEA.

*By the Court.*—Order reversed.