COURT OF APPEALS
DECISION
DATED AND FILED

March 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10
and RULE 809.62.

Appeal No. **2019AP1265**

STATE OF WISCONSIN

Cir. Ct. No. **2016CV1218**

IN COURT OF APPEALS
DISTRICT I

MARK ROOB AND KRISTINE ROOB,

PLAINTIFFS-APPELLANTS,

V.

MAXCARE HARDWOOD FLOORING,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County:
JEFFREY A. CONEN, Judge. *Affirmed.*

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent
or authority, except for the limited purposes specified in** WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM.  Mark Roob and Kristine Roob[1] appeal an order, entered after a bench trial, dismissing their claims against MaxCare Hardwood Flooring (MaxCare).  The Roobs sought damages on the grounds that MaxCare improperly refinished their maple floors and did not comply with Wisconsin regulations governing home improvement trade practices.  The circuit court concluded that MaxCare complied with the parties' agreement, that the Roobs failed to prove any violations of the Wisconsin Administrative Code, and that the Roobs therefore were not entitled to damages.  On appeal, the Roobs allege that the circuit court made numerous errors of law.  We reject these claims and affirm.

## Background

¶2    Following a bench trial, the circuit court entered a written decision that included numerous findings of fact, none of which the Roobs seek to overturn on appeal.  We rely on those findings in describing the relevant background information here.

¶3    In February 2015, the wood floors in the Roobs' home sustained water damage.  Most of the home's second story had maple floors, but the top of the stairs and the study had oak floors.

¶4    In March 2015, Anthony Glapa, owner of MaxCare, met with Roob in the Roobs' home.  Glapa inspected the water damage and provided a written estimate to repair the floors.  Roob read the estimate closely.  The estimate, which was not signed, proposed in part that MaxCare would sand and refinish "oak with

---

[1] Throughout the remainder of this opinion, we refer to Mark Roob and Kristine Roob collectively as "the Roobs."  We refer to Mark Roob individually as "Roob."

one coat of light to medium stain; maple with one coat of sealer and two coats of Commercial Finish" (some capitalization omitted). The estimate also provided that the "customer must be present [on] the day of sanding for color authorization" and "must sign off on color choice." Glapa explained to Roob that a MaxCare worker would show him stain samples later and that Roob would be required to select a stain before MaxCare began its work.

¶5 Roob also received a brochure from Glapa at their March meeting, and Roob read the brochure carefully. The brochure described MaxCare's process for sanding and refinishing floors. As relevant here, the brochure stated that MaxCare will "sand the floors down to the bare wood and apply either a neutral stain or a stain color" and that the customer chooses the stain color.

¶6 Roob hired MaxCare in September 2015 to repair the second-story floors in the Roobs' home. On September 30, 2015, MaxCare employees David Stahnke and Douglass Wegner arrived at the home to begin work on the maple floors. Before the work began, Roob paid a deposit of $600 and selected "neutral" as the stain that he wanted. Stahnke wrote "neutral" on MaxCare's color authorization form. The form also reflected that MaxCare would use Arboritic Finish. Stahnke and Roob both signed the completed form.

¶7 The MaxCare employees then performed repair work on the maple floors in two rooms and applied DuraSeal, a neutral stain that is also a sealer. A third MaxCare employee applied the finish.

¶8 Wegner returned to the Roobs' home at a later date to repair more of the maple floors. He applied neutral stain to the master bedroom floor and showed the results to Roob before applying the stain to all of the rooms.

¶9     Roob was dissatisfied with the color of the floors following application of the neutral stain. He retained another contractor to repair all of the floors in the Roob home. Roob's insurer paid the second contractor's invoice.

¶10    MaxCare sued the Roobs, seeking additional payment for the repairs that MaxCare performed. The Roobs counterclaimed, alleging that MaxCare failed to comply with certain provisions of the Wisconsin Administrative Code applicable to home improvement trade practices. The Roobs further alleged that, due to MaxCare's noncompliance with the administrative code, they suffered pecuniary loss. MaxCare subsequently dismissed its claim, and the matter proceeded to a bench trial solely on the Roobs' counterclaims. The circuit court rejected those counterclaims in their entirety, and the Roobs appeal.

## Discussion

¶11    The Roobs first argue that MaxCare failed to comply with WIS. ADMIN. CODE § ATCP 110.05 (Mar. 2014).[2] The regulation provides, in pertinent part:

> **(1)** The following home improvement contracts and all changes in the terms and conditions thereof shall be in writing: **(a)** Contracts requiring any payment of money or other consideration by the buyer prior to completion of the seller's obligation under the contract. **(b)** Contracts which are initiated by the seller through face-to-face solicitation away from the regular place of business of the seller, mail or telephone solicitation away from the regular place of business of the seller, mail or telephone solicitation, or handbills or circulars delivered or left at places of residence.

---

[2] All references to WIS. ADMIN. CODE ATCP 110 are to the March 2014 version.

> **(2)** If sub (1) requires a written home improvement contract or the buyer signs a written contract, the written contract shall be signed by all parties and shall clearly, accurately and legibly set forth all material terms and conditions of the contract[.]

Sec. ATCP 110.05(1)-(2).

¶12    Preliminarily, we note the Roobs' acknowledgement that they had an agreement with MaxCare.  Further, no dispute exists that the parties' agreement constituted a home improvement contract within the meaning of the administrative code.[3]  The Roobs argue, however, that the contract violated WIS. ADMIN. CODE § ATCP 110.05 because the contract was not in writing, as required by § ATCP 110.05(1), and was not signed by all parties, as required by § ATCP 110.05(2).  In support, the Roobs emphasize that the estimate prepared by MaxCare in March 2015 is unsigned.

¶13    The circuit court found that the parties' written contract included the estimate and the color authorization form, the latter of which the parties signed.  The rule is long-settled in Wisconsin that contracts required to be in writing normally may consist of multiple documents, and "[i]t is enough if one is signed." *See Kelly v. Sullivan*, 252 Wis. 52, 57, 30 N.W.2d 209 (1947).  We therefore first consider whether WIS. ADMIN. CODE § ATCP 110.05 permits us to apply this rule in the instant case.

¶14    The interpretation of a regulation, like the interpretation of a statute, is a question of law that we review *de novo*.  *See Wisconsin Power & Light Co. v.*

---

[3] WISCONSIN ADMIN. CODE § ATCP 110.01(4) provides, in pertinent part:  "'Home improvement contract' means an oral or written agreement between a seller and an owner ... under which the seller is to perform labor or render services for home improvements, or furnish materials in connection therewith."

*PSC*, 2006 WI App 221, ¶8, 296 Wis. 2d 705, 725 N.W.2d 423. "'We are to give effect to the intent of the regulation.'" *Snyder v. Badgerland Mobile Homes, Inc.*, 2003 WI App 49, ¶10, 260 Wis. 2d 770, 659 N.W.2d 887 (citation omitted). Our methodology requires that we determine that intent by "'look[ing] first to the plain meaning of the regulation. If it clearly and unambiguously sets forth the intent, it is our duty to merely apply that intent to the facts and circumstances of the question presented.'" *Id.* (citation omitted).

¶15     The Roobs do not identify anything in the plain language of WIS. ADMIN. CODE § ATCP 110.05 that prohibits contracts consisting of multiple documents. We do not read words that are not there into a statute or regulation. *See State v. Fitzgerald*, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165. Accordingly, we are satisfied that no legal impediment barred the parties in this case from entering into a contract composed of multiple documents, only one of which is signed.

¶16     We turn to whether the documents at issue here constituted a signed contract. "[A] contract consists of an offer, an acceptance and consideration. An offer and acceptance exist when mutual expressions of assent are present. Consideration exists if an intent to be bound to the contract is evident." *Gustafson v. Physicians Ins. Co. of Wis., Inc.*, 223 Wis. 2d 164, 173, 588 N.W.2d 363 (Ct. App. 1998) (citations omitted). When the facts are undisputed, the existence of a contract is a question of law for our independent review. *See id.*

¶17     Here, no facts are in dispute. The circuit court found that MaxCare, by Glapa, prepared an estimate describing the work that the company proposed to perform and that MaxCare delivered the estimate to Roob, who read it "closely." The circuit court also found that Roob and Stahnke, a MaxCare representative,

signed the color authorization form on which Roob selected and approved the stain that MaxCare would apply to the floors. The circuit court further found that Roob paid the requested deposit to MaxCare before it began any repair work on the Roobs' floors. In light of the circuit court's factual findings, we conclude that the circuit court properly determined that MaxCare and Roob entered a signed written contract consisting of multiple documents.[4]

¶18   Because we agree with the circuit court's conclusion that the parties had a written contract composed of multiple documents, one of which was signed by both parties, we reject the Roobs' contentions that the contract violated WIS. ADMIN. CODE § ATCP 110.05 because the contract was neither in writing nor signed. These contentions do not provide a basis for relief.

¶19   In the reply brief, the Roobs argue that if their contract with MaxCare consisted of both the estimate and the color authorization form, then MaxCare ran afoul of WIS. ADMIN. CODE § ATCP 110.05 in several other ways. Specifically, the Roobs allege that: (1) MaxCare did not give them a copy of the color authorization form before starting repair work, as required by § ATCP 110.05(3); and (2) MaxCare's estimate conflicts with the color authorization form in regard to the number of square feet involved in the repair work and therefore the contract violated § ATCP 110.05(2)(b) by failing to describe the work. We decline to address these arguments. "It is a well-established rule that we do not

---

[4] We also observe that, as Roob conceded at trial, the Roobs acknowledged in their amended complaint that their agreement with MaxCare consisted of the estimate and color authorization form. *See* ***Gouger v. Hardtke***, 167 Wis. 2d 504, 518, 482 N.W.2d 84 (1992) (recognizing that adverse pleadings are admissible at trial as admissions against a party opponent).

consider arguments raised for the first time in a reply brief." *Bilda v. County of Milwaukee*, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661.

¶20    We turn to the Roobs' claims that MaxCare violated WIS. ADMIN. CODE § ATCP 110.05(1) by "chang[ing] the contract terms" without written notice, and that MaxCare violated WIS. ADMIN CODE § ATCP 110.023(1) by substituting products without the Roobs' approval. Underlying these allegations is the Roobs' contention that MaxCare's March 2015 estimate reflected that MaxCare would apply a sealer to the Roobs' maple floors but MaxCare instead applied a stain. The circuit court rejected the Roobs' allegations, concluding that MaxCare complied with the contract terms by applying the product that Roob chose.

¶21    Contract interpretation is an issue of law that we review *de novo*. *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 460, 405 N.W.2d 354 (Ct. App.1987). Our primary goal in contract interpretation is to give effect to the parties' intentions. *Seitzinger v. Community Health Network*, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426. We ascertain the parties' intentions by looking first at the language of the contract itself. *Id.* "If the language within the contract is ambiguous, two further rules are applicable: (1) evidence extrinsic to the contract itself may be used to determine the parties' intent and (2) ambiguous contracts are interpreted against the drafter." *Id.* We must, however, interpret ambiguous contract language in a way that is "consistent with what a reasonable person would understand the words to mean under the circumstances." *See id.* Moreover, when interpreting a contract, a court must consider the agreement as a whole, "giv[ing] meaning to every word" when possible. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶45, 326 Wis. 2d 300, 786 N.W.2d 15.

¶22 We start with the question of whether the contract is ambiguous. The estimate stated that MaxCare would use a "sealer" on the maple floors and a stain on the oak floors. According to the Roobs, the contract thus reflects that MaxCare agreed to apply *only* a sealer and not a stain to the maple floors. The estimate also provided, however, that the customer "must sign off on color choice" and "must be present the day of sanding for color authorization." Further, the color authorization form encompassed both "Oak/Maple" woods and reflected that Roob chose "neutral" as the stain color for the floors. MaxCare therefore contends that the Roobs' interpretation of the contract is wrong and that the contract in fact included the Roobs' agreement to select a stain color that MaxCare would apply to the maple floors. We conclude that the contract is ambiguous in respect to whether MaxCare would apply a stain to the maple floors.

¶23 "If ambiguity exists, then the intent of the parties is a question of fact," *Insurance Co. of North America v. DEC International, Inc.*, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998), and the circuit court here made a variety of factual findings relevant to determining the parties' intent. When we review factual findings, we sustain them unless they are clearly erroneous. *See State v. Walli*, 2011 WI App 86, ¶14, 334 Wis. 2d 402, 799 N.W.2d 898. In this case, the Roobs do not challenge the circuit court's factual findings, and we accept the Roobs' implicit concession that the findings govern our review.

¶24 As we have seen, the circuit court found that MaxCare, by Glapa, met with Roob, provided an estimate for repairs, and explained that Roob would be required to select a stain before MaxCare began its work. The circuit court also found that the brochure Glapa provided with the estimate reiterated that MaxCare would apply either "a neutral stain or a stain color of [the customer's] choice." Roob chose a neutral stain before MaxCare employees began work on the maple

9

floors, and Roob memorialized his choice in a signed writing, namely, the color authorization form. Moreover, while the contract provided that MaxCare would use a sealer on the maple floors, the circuit court found, based on expert testimony, that the neutral stain used by MaxCare on the maple floors also acts as a sealer.

¶25 In light of the foregoing findings of fact, we must reject the Roobs' claims that MaxCare violated WIS. ADMIN. CODE § ATCP 110.05(1) by changing the contract terms without written notice, or that MaxCare violated WIS. ADMIN. CODE § ATCP 110.023(1) by substituting products without the Roobs' approval. The facts found by the circuit court reflect that MaxCare applied the product that .the parties contracted to use and that Roob expressly approved. Accordingly, the Roobs fail to show that MaxCare violated the administrative code by applying a stain to the maple floors. *See Reusch v. Roob*, 2000 WI App 76, ¶10, 234 Wis. 2d 270, 610 N.W.2d 168 (explaining that the application of law or statute to undisputed facts is a question of law).

¶26 Next, we reject the Roobs' claim that MaxCare violated WIS. ADMIN. CODE ATCP § 110.02(11) by making a "false, deceptive, or misleading representation in order to induce" the Roobs to enter into a home improvement contract. This contention is based on the Roobs' premise that MaxCare's March 2015 estimate would lead "a reasonable homeowner to believe that one coat of light to medium stain would be applied to oak floors, while only a sealer would be applied to maple floors." As we have already explained, the contract in this case included not only the estimate but also the color authorization form. The circuit court found that the contract as a whole reflected the parties' agreement that MaxCare would apply a neutral stain to the maple floors, a stain that additionally acted as a sealer. MaxCare thus did not make false, deceptive, or misleading

misrepresentations. It provided the products and services for which the parties contracted.[5]

¶27 Finally, the Roobs argue that the circuit court erroneously analyzed their claim for damages. The Roobs claim for damages, however, is grounded on MaxCare's alleged violations of the Wisconsin Administrative Code. Because the Roobs failed to prove any violations, they failed to support a claim for damages. Accordingly, discussion of that claim is unnecessary. *See State v. St. Germaine*, 2007 WI App 214, ¶24 n.5, 305 Wis. 2d 511, 740 N.W.2d 148 (explaining that only dispositive issues need be addressed). For all the foregoing reasons, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[5] The Roobs also suggest that MaxCare engaged in false, deceptive, and misleading practices because "MaxCare told [Roob] that it could provide a 'natural' look for the maple floors." MaxCare responds that this claim lacks any support in the record. Indeed, the circuit court found only that Roob told MaxCare that he wanted a natural look on the maple floors, not that MaxCare said it could provide such a look. To the extent that the Roobs rely on Roob's testimony to support this claim of false practices, the circuit court explicitly found that Roob had nine criminal convictions and was not a credible witness. We observe that the Roobs' reply brief does not address MaxCare's arguments regarding this false practices claim. We deem the Roobs' silence a concession, and we therefore reject the claim without further discussion. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.